[Cite as *Philpott v. Pride Technologies of Ohio, L.L.C.*, 2015-Ohio-4341.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTOPHER PHILPOTT, | : | APPEAL NO. C-140730 |
| Plaintiff-Appellee, | | TRIAL NO. A-1403566 |
| | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| PRIDE TECHNOLOGIES OF OHIO, LLC, | : | |
| Defendant-Appellant. | : | |
| | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  October 21, 2015

*Katz, Greenberger & Norton LLP* and *Stephen E. Imm*, for Plaintiff-Appellee,

*Wood & Lamping LLP* and *Dale A. Stalf*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Pride Technologies of Ohio, LLC, ("Pride Technologies") appeals the decision of the trial court overruling its motion to stay or dismiss the proceedings filed against it by plaintiff-appellee Christopher Philpott, and compel Philpott to arbitrate his claims. Because Philpott failed to demonstrate that the costs of arbitration would be prohibitively high as to render the arbitration provision in his contract with Pride Technologies substantively unconscionable, and Pride Technologies had not waived its right to arbitrate the dispute, we reverse the judgment of the trial court.

### *The Parties' Attempted Arbitration*

{¶2} Philpott had been employed by Pride Technologies for eight years, ending in 2012. That same year, Pride Technologies filed a demand for arbitration with the American Arbitration Association ("AAA") in New York against Philpott in accordance with Pride Technologies' "Executive Employment Agreement," demanding over $190,000 from Philpott. Philpott filed a counterclaim in the arbitration, arguing that Pride Technologies had failed to credit his profit-sharing account approximately $48,000, as required by the parties' "Profit Sharing Unit Agreement."

{¶3} In May 2014, a month before the scheduled arbitration, AAA suspended the arbitration in accordance with its rules, because Philpott had not paid his portion of costs and fees, totaling $11,950. Philpott informed Pride Technologies and the arbitrator that he could not afford to pay the nearly $12,000 bill. The arbitrator made clear that Pride Technologies, as the claimant, could pay Philpott's share of the fees to avoid suspension. Pride Technologies refused to pay Philpott's

share and expressed doubt as to Philpott's representation that he could not afford to pay the fees. Pride Technologies also stated its intention to file suit in New York state court should Philpott refuse to pay.

{¶4} A week before the scheduled arbitration hearing, the parties received an email from an AAA representative, stating that Philpott's share of the fees remained unpaid, and that AAA would cancel the hearings unless Philpott or Pride Technologies paid the remaining balance. The email also indicated that the arbitrator would work with the parties to reduce fees. Apparently, neither side responded to the arbitrator's offer, because Philpott filed the instant action in the Hamilton County Court of Common Pleas on June 17, 2014.

### Motion to Stay Proceedings and Compel Arbitration

{¶5} Philpott's complaint mirrored his counterclaim in the arbitration, and Philpott attached a copy of the Profit Sharing Unit Agreement to the complaint. In response to Philpott's complaint, Pride Technologies filed a motion to stay or dismiss the proceedings and compel arbitration, arguing that Philpott's claims must be arbitrated in accordance with the arbitration clause in the Profit Sharing Unit agreement, which provided: "Any dispute arising between the parties concerning the interpretation, alleged breach or enforcement of this Agreement shall be submitted to final and binding arbitration pursuant to the employment rules of the [AAA] before a single arbitrator in New York City."

{¶6} Philpott responded to Pride Technologies' motion to compel arbitration with his affidavit opposing the motion. Philpott argued that Pride Technologies had waived the arbitration clause in the Profit Sharing Unit Agreement by failing to pay Philpott's unpaid share of the arbitration fees when it had the ability

3

to do so. Philpott stated that he had sustained a significant period of unemployment after leaving Pride Technologies, and that he supported his wife and three children, two of whom had severe disabilities. In Pride Technologies' reply brief, it denied that it had waived the arbitration provision by refusing to pay Philpott's share of the arbitration fees because the AAA rules permitted, but did not require, a party to pay the opposing party's fees. Pride Technologies argued that Philpott had failed to demonstrate an inability to pay, and that Philpott had been a well-paid executive employee, receiving an annual salary of $175,000 at Pride Technologies. Pride Technologies also argued that Philpott could have sought a reduction in fees as offered by AAA, but did not. Finally, Pride noted that Philpott had failed to show that the arbitration clause was otherwise unenforceable for reasons of fraud or unconscionability.

{¶7} The trial court held a hearing on Pride Technologies' motion. At the hearing, Philpott told the court that Pride Technologies had filed suit against him in New York state court in July 2014, which, Philpott argued, further reinforced that Pride Technologies had waived the arbitration clause. After listening to argument by counsel, the trial court and the parties agreed that Philpott's asserted inability to pay the arbitration fees would require discovery and further evidence; therefore, the trial court agreed to continue the matter for a decision on the waiver issue, and, if necessary, reach the "unconscionability" issue.

{¶8} The trial court issued a decision denying Pride Technologies' motion to compel arbitration. In its decision, the trial court stated, "[t]he troublesome part of all of this are the fees required by the AAA. Simply put they seem extraordinary. * * * If an alternative dispute resolution is of such a nature and/or expense that an

4

aggrieved party cannot participate, then it is invalid." It is from this decision that Pride Technologies now appeals.

### *Pride Technologies' Appeal*

{¶9} In a single assignment of error, Pride Technologies argues that the trial court erred in overruling its motion to compel arbitration.

{¶10} As an initial matter, we address whether Ohio or New York law governs the parties' dispute. The Profit Sharing Unit Agreement contained the following governing law clause: "The validity, interpretation, performance and enforcement of this Agreement and the Profit Sharing Member's rights in, to and under the Profit Sharing Units shall for all purposes be governed by the laws of the State of New York without giving effect to the principles of conflicts of laws thereof."

{¶11} The law of the forum state controls procedural remedies, such as motions to enforce arbitration. *See Guider v. Lci Communications Holdings Co.*, 87 Ohio App.3d 412, 417, 622 N.E.2d 415 (10th Dist.1993), citing *Shafer v. Metro-Goldwin-Mayer Distrib. Corp.*, 36 Ohio App. 31, 172 N.E. 689 (10th Dist.1929). By contrast, the law of the state chosen by agreement of the parties typically governs substantive issues regarding contract enforcement. *See Wise v. Zwicker & Assocs., P.C.*, 780 F.3d 710, 715 (6th Cir.2015). A choice-of-law determination becomes unnecessary, however, if the laws of each forum would reach the same result. *Holliday v. Ford Motor Co.*, 8th Dist. Cuyahoga No. 86069, 2006-Ohio-284, ¶ 19. Here, the parties contend that New York and Ohio law treat enforcement of an arbitration clause over objections of waiver or unconscionability similarly. Thus, we will apply Ohio law in resolving Pride Technologies' appeal.

5

## *Review of Agreements to Arbitrate*

{¶12}  Ohio's Arbitration Act, R.C. Chapter 2711, provides two methods for enforcing arbitration agreements: 1) R.C. 2711.02, which allows for an order staying proceedings pending arbitration, and 2) R.C. 2711.03, which allows for an order compelling arbitration.  *Jarvis v. Lehr*, 1st Dist. Hamilton No. C-130832, 2014-Ohio-3567, ¶ 8.  Ohio law favors arbitration such that if a claim falls within an agreement to arbitrate, a presumption in favor of arbitration arises.  *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27.   Ohio's Arbitration Act also embodies this presumption in favor of arbitration in R.C. 2711.01(A), which provides that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶13}  An order granting or denying a stay of proceedings pending arbitration is a final order as provided in R.C. 2711.02(C).  *Rippe & Kingston Co. PSC v. Kruse*, 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, ¶ 14.  As a general matter, we review the denial of a motion to stay under R.C. 2711.02(B) for an abuse of discretion.  *Id.*  However, where the enforceability of an arbitration agreement raises questions as to whether a party's actions constitute a waiver of the right to arbitrate as a matter of law, or as to whether an agreement to arbitrate is unconscionable, we review the trial court's order de novo.  *See Taylor Bldg.* at ¶ 31-36; *Snider v. S. Forty Homes, Inc.*, 5th Dist. Muskingum No. CT2007-0027, 2008-Ohio-385, ¶ 8.

{¶14}  In its appeal, Pride Technologies argues that the trial court erred in denying its motion to stay the proceedings and compel arbitration on the ground of

6

excessive costs because Philpott failed to set forth any evidence demonstrating that enforcement of the arbitration provision would be unconscionable. We agree. The Ohio Supreme Court has noted that "an arbitration clause will not be held unenforceable based on unsupported allegations of prohibitive costs." *Taylor Bldg.* at ¶ 57-59, citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90-91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Therefore, a party seeking to avoid enforcement of an arbitration provision because of prohibitive costs must either come forth with evidence regarding inability to pay the arbitration costs and fees, or demonstrate that arbitration costs and fees are substantially higher than the costs of litigating in court. *See Norman v. Schumacher Homes of Circleville, Inc.*, 2013-Ohio-2687, 994 N.E.2d 865, ¶ 26 (4th Dist.).

{¶15} With regard to his financial situation, Philpott stated that he had sustained a significant period of unemployment after leaving Pride Technologies, and that he supported his wife and three children, two of whom had severe disabilities. However, Philpott's financial circumstances were not otherwise made part of the record. As to the costs of arbitration, Philpott provided the court with evidence of arbitration costs, but did not provide any comparison of those costs to the costs of litigating in court. Moreover, the record indicates that the arbitrator offered to work with the parties to reduce fees, but that offer apparently had been rejected by Philpott, who filed the instant suit instead. Therefore, Philpott failed to demonstrate that the costs of arbitration would be prohibitively high as to render the arbitration provision substantively unconscionable. *See Taylor Bldg. Corp.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 59.

{¶16} Philpott urges this court to affirm the trial court because, Philpott argues, Pride Technologies waived its right to arbitrate the dispute. A party seeking to demonstrate that an opposing party waived an arbitration clause must show that the opposing party knew about the right to arbitrate, and acted inconsistently with that right as shown by the totality of the circumstances. *Hilton v. Mill Rd. Constr. II, Ltd.*, 1st Dist. Hamilton No. C-030200, 2003-Ohio-7107, ¶ 7. In considering whether the totality of the circumstances warrant a finding of waiver, courts have considered

> 1) any delay in the requesting party's demand to arbitrate * * *; 2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; 3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and 4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts.

(Internal citations omitted.) *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 414, 701 N.E.2d 1040 (3d Dist.1997).

{¶17} In this case, Pride Technologies unquestionably knew about its right to arbitrate, as it sought to arbitrate the dispute even prior to Philpott's filing of the instant complaint. The question then becomes whether Pride Technologies has acted inconsistently with its right to arbitration. Prior to the filing of Philpott's complaint in the trial court, Pride Technologies initiated arbitration proceedings against Philpott in New York. After Philpott failed to pay his share of the arbitration fees

and costs, Philpott filed the instant suit. Pride Technologies responded to the complaint with its motion to enforce arbitration, prior to answering or conducting any discovery. Thus, the totality of the circumstances indicates that Pride Technologies has not acted inconsistently with its right to arbitration.

{¶18} Philpott contends that Pride Technologies had the opportunity to pay Philpott's share of the arbitration fees and costs to avoid suspension under the AAA rules, and because it did not, Pride Technologies' actions demonstrate a waiver of its right to arbitrate. We disagree. First, nothing in the parties' contract required Pride Technologies to pay Philpott's portion of the arbitration costs. Second, although the AAA rules permitted Pride Technologies to pay Philpott's share of the arbitration fees and costs to avoid suspension, nothing required Pride Technologies to front the entirety of the arbitration fees or costs for Philpott. Philpott may not like the AAA rules and fee structure, however, he agreed to be bound by them to the exclusion of other arbitration entities. Moreover, we are not persuaded that Pride Technologies' suit in New York state court indicates a waiver of the right to arbitrate. Pride Technologies' suit in New York state court followed Philpott's initiation of the current suit, and Pride Technologies has steadfastly maintained its desire to arbitrate.

{¶19} In conclusion, the record fails to support Philpott's argument that Pride Technologies has waived its right to arbitrate the instant dispute, and Philpott has failed to demonstrate that arbitration would be so cost prohibitive as to become unconscionable. Therefore, in accordance with the strong presumption in Ohio law favoring arbitration, we sustain Pride Technologies' assignment of error. The

judgment of the trial court is reversed. We remand the matter to the trial court to enter an order staying the proceedings and compelling arbitration.

Judgment reversed and cause remanded.

**HENDON, P.J.,** and **MOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.