[Cite as *Fries v. Greg G. Wright & Sons, L.L.C.*, 2018-Ohio-3785.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CARL FRIES, | : | APPEAL NO. C-160818<br>TRIAL NO. A-1502706 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| GREG G. WRIGHT & SONS, LLC, | : | |
| CKF OHIO ASSET ACQUISITIONS, LLC, | : | |
| | : | |
| MARGARET GROSSMANN, | : | |
| THOMAS E. GROSSMANN, | : | |
| and | : | |
| CHARLES FISCHER, | : | |
| Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 21, 2018

*Cors & Bassett, Kevin R. Feazell, Susan Bell* and *Kelly Johnson,* for Plaintiff-Appellee*,*

*Thomas E. Grossmann*, for Defendants-Appellants Greg G. Wright & Sons, LLC, Margaret Grossmann, and Thomas E. Grossmann,

*Charles Fischer*, for Defendants-Appellants CKF Ohio Asset Acquisitions, LLC, and Charles Fischer.



**Mock, Presiding Judge.**

{¶1}     This court is tasked with determining when causes of action involving members of a limited liability company and litigation arising from the breach of several lease agreements fall within the arbitration clause of Greg G. Wright & Sons's operating agreement.   For the reasons set forth below, we affirm the trial court's judgment in part, reverse it in part, and remand the cause for further proceedings.

### Member Leaves Company, Litigation Ensues

{¶2}     Defendant-appellant Greg G. Wright & Sons, LLC, is a machine tool, stamping, engraving, and CNC lathe company that was founded in 1860 by the grandfather of defendant-appellant Margaret W. Grossmann.   In 2003, Margaret Grossmann purchased the assets of Greg G. Wright & Sons from her father, who had been the sole owner, and hired plaintiff-appellee Carl A. Fries, III, as the chief executive officer.   When he was hired, Fries was given a 15 percent ownership interest in Greg G. Wright & Sons.   After each year of employment, Fries earned an additional three percent interest.   By the time he left the position in March of 2011, Fries had accumulated a 36 percent ownership interest in Greg G. Wright & Sons.

{¶3}     Section 9.1 of the operating agreement of Greg G. Wright & Sons contained the following dispute resolution provisions:

(a) Except as provided otherwise in this Agreement, if any dispute or deadlock has not been resolved by negotiation within thirty (30) days of either party's written notification to the other party of the dispute, the parties shall endeavor to settle such disputes or deadlock by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes.   The neutral third party required by the procedure shall be a lawyer selected by the

3

CPR Panel of Neutrals. If the parties encounter difficulty in agreeing on a neutral party, they will seek the assistance of CPR in the selection process with respect thereto.

(b) Except as provided otherwise in this Agreement, if any dispute regarding the interpretation of this Agreement or the rights of the Members hereunder (but not as to any business decisions to be made by the Board of Managers within the scope of this Agreement) has not been resolved by mediation within sixty (60) days of the initiation of such procedure, the parties shall finally settle such dispute by binding arbitration conducted expeditiously in accordance with the CPR-Rules for Non-Administered Arbitration of Business Disputes by a sole arbitrator; provided, however, that if one party has requested the other to participate in negotiations or mediation and the other had failed to participate the requesting party may initiate arbitration before expiration of the above period. The sole arbitrator will be a lawyer selected from the CPR Panel of Neutrals. If the parties encounter difficulty in agreeing on an arbitrator they will seek the assistance of CPR in the selection process. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. § 1-16 and judgment upon the award rendered by the Arbitrator(s) may be entered by any court having jurisdiction thereof.

(c) The parties shall conduct any mediation or arbitration pursuant to this § 9.1 in Cincinnati, Ohio, and the arbitrator shall apply the substantive law of Ohio as applicable to the dispute.

(d) The arbitrator is not empowered to award consequential or punitive damages under any circumstances, whether statutory or

4

common law in nature, and including, but not limited to, treble damages awarded by any statute. Parties shall make the arbitrator aware of this provision limiting damages and liabilities before the start of any arbitration proceedings.

* * *

(f) The remedies and procedures set forth in this § 9.1 are exclusive, final, and binding remedies and procedures and shall be in lieu of any right of the parties to institute proceedings in any court of law.

{¶4} In 2013, two years after Fries had left Greg G. Wright & Sons, a complaint was filed against Greg G. Wright & Sons and Fries individually alleging that Greg G. Wright & Sons had failed to make payments on certain equipment leases—payments for which Fries had made a personal guarantee. The plaintiff, PNC Equipment Finance, LLC, sought a total of $336,101.79 in damages, jointly and severally, from Greg G. Wright & Sons and Fries. Defendant-appellant Thomas Grossmann, an attorney, sought an extension of time to file an answer and subsequently filed an answer on behalf of only Greg G. Wright & Sons. Fries, who had been previously represented by Grossmann in other matters relating to Greg G. Wright & Sons, claimed that he was not informed that Grossmann was filing only on behalf of Greg G. Wright & Sons, and subsequently failed to file his own answer in the case.

{¶5} During the course of the litigation, PNC Equipment Finance filed a motion for a substitution of parties, asserting that the right to collect the money due had been transferred to defendant-appellant CFK Ohio Asset Acquisitions, LLC. While the motion was filed on behalf of PNC Equipment Finance, the signature lines reflect the initials "TEG per telephone authority." The certificate of service was signed by Thomas Grossmann.

5

{¶6} Fries sought to exercise his rights, as a member of Greg G. Wright & Sons, to examine its books and records. Greg G. Wright & Sons, through Thomas Grossmann, refused to allow him to examine the records, claiming that he was no longer a member of Greg G. Wright & Sons. CFK Ohio Asset Acquisitions sought and received a judgment against Fries, and dismissed Greg G. Wright & Sons as a party to the case. Fries filed a motion for relief from judgment, pursuant to Civ.R. 60(B), asserting that he had believed that Thomas Grossmann had been representing him as well as Greg G. Wright & Sons. The trial court denied the motion, concluding that Fries had not established that his belief was reasonable. Fries did not appeal that decision.

{¶7} On May 19, 2015, Fries filed a verified complaint against Greg G. Wright & Sons, Thomas Grossmann, Margaret Grossmann, CKF Ohio Asset Acquisitions, and Charles Fischer (hereinafter collectively "appellants"). Fries's verified complaint lists six causes of action: breach of fiduciary duty, unjust enrichment, conversion, right of reimbursement, fraudulent concealment, and civil conspiracy. The first three causes of action arose from his status as a member with Greg G. Wright & Sons, the second set of claims involved his having signed as a personal guarantor on the lease agreements that resulted in litigation.

{¶8} After the verified complaint was filed, the parties engaged in significant—and often contentious—litigation. During the course of the proceedings below, appellants filed a limited number of pleadings before filing a motion to stay the proceedings in order for the parties to submit to arbitration. After the motion for a stay was filed, the course of the litigation took a decidedly tortured path, as the trial court described

> [t]his case, due to two appeals and several affidavits of disqualification
> and continuance requests from the defendants, has only been active on

6

my docket for a short time this year. The appeals have now been dismissed by the First Appellate District and the Affidavits have been denied by the Chief Justice of the Ohio Supreme Court. I have been sued in my official capacity in a Writ of Procedendo which had not had a final disposition. * * * Paradoxically, all of the failed appeals and affidavits have had the effect of delaying a ruling on the pending motions while the Application for Writ of Procedendo decries the lack of ruling on the motions. Of course, more motions have been filed while the case was stayed.

* * *

Mr. Fischer claims that he will not provide discovery because counsel for other defendants have filed a Motion for Arbitration. There is no law supporting this position.

* * *

The defendants have refiled their motions for more definite statement that were previously overruled.

* * *

These parties do not agree on much, including whether the case should go to arbitration. This is not a situation where counsel, working collegially, have agreed to work together. The attorneys do not discuss the case. There are lectures but no discussions. In most instances, procedural problems tend to be worked out. The case at bar is the polar opposite of cooperation.

{¶9}    After conducting a hearing on the motion to stay the proceedings, the trial court found that appellants had waived their right to seek arbitration, and that the record had not been sufficiently developed to determine if the claims involved fall

7

within the scope of the arbitration clause. Appellants appeal the decisions of the trial court to deny their motion for a more definite statement and their motion to stay the proceedings pending arbitration, and to grant Fries's motion to compel discovery.

**Motion For A More Definite Statement**

{¶10} In their first assignment of error, appellants claim that the trial court erred when it denied their motion for a more definite statement for Fries's failure to attach documents to his verified complaint. They claim that the decision was a final, appealable order because it affected "a substantial right in an action and prevent[ed] a judgment." *See* R.C. 2505.02(B)(1).

{¶11} The Ohio Constitution limits an appellate court's jurisdiction to the review of final, appealable orders. *Hooten v. Safe Auto Ins. Co.*, 1st Dist. Hamilton No. C-061065, 2007-Ohio-6090, ¶ 10. "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 5. The threshold requirement, therefore, is that the order satisfies the criteria of R.C. 2505.02. *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007-Ohio-607, 861 N.E.2d 519, ¶ 15.

{¶12} R.C. 2505.02(B)(1) provides that an order "that affects a substantial right in an action that in effect determines the action and prevents a judgment" is a final order. In order to satisfy the statute, the appealing party must show both that the decision below affected a substantial right and that the decision effectively determined the action and prevented a judgment.

{¶13} On its face, the trial court's order does not fall within R.C. 2505.02(B)(1) because it does not determine the action or prevent a judgment. The fact that, as appellants argue, "[t]he documents setting forth and determining the parties' arbitration rights are necessarily connected to determining the merits of stay

and arbitration issues," does not change this. The trial court's entry denying the motion for a more definite statement did not foreclose the admission of the documents, and the documents were produced and admitted into the record by appellants themselves. " 'A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order.' " *State ex rel. Keith v. McMonagle*, 103 Ohio St.3d 430, 2004-Ohio-5580, 816 N.E.2d 597, ¶ 4, quoting *Bell v. Horton*, 142 Ohio App.3d 694, 696, 756 N.E.2d 1241 (4th Dist.2001).

{¶14} Moreover, the trial court's order does not affect a substantial right. R.C. 2505.02(A)(1) defines substantial right as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." Thus "[a] substantial right is a legal right that is entitled to enforcement and protection by law." *Browder v. Shea*, 10th Dist. Franklin No. 04AP-1217, 2005-Ohio-4782, ¶ 13, citing *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64 (1989). An order affecting a substantial right is "one which, if not immediately appealable, would foreclose appropriate relief in the future." *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

{¶15} The trial court's order did not affect a substantial right. The trial court's decision not to grant the motion for a more definite statement simply prevented appellants from being able to file a motion to dismiss pursuant to Civ.R. 12(B)(6). Nothing would prevent appellants from producing the documents themselves—as they have done below—and pursuing an adjudication of the legal issues involved by way of a motion for summary judgment filed pursuant to Civ.R. 56.

{¶16} Appellants' first assignment of error does not attack a final appealable order under R.C. 2505.02(B)(1). We therefore lack the jurisdiction to address it.

### Arbitration in Ohio

{¶17} In their next three assignments of error, appellants claim that the trial court erred in refusing to allow the matter to proceed to arbitration. In particular, appellants argue first that the trial court erred when it determined that appellants had waived the right to arbitrate the matter by their participation in the litigation. They then argue that the trial court erred when it denied their motion to compel arbitration. Finally, they argue that the trial court erred when it denied the motion to stay the proceedings pursuant to R.C. 2711.02(B).

{¶18} Ohio public policy encourages arbitration as an alternative means of dispute resolution. *See Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711-712, 590 N.E.2d 1242 (1992); *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 500, 692 N.E.2d 574 (1998). That public policy is reflected in R.C. 2711.02(B):

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

When an action involves both arbitrable and nonarbitrable claims, the entire action must be stayed until the issues subject to arbitration are resolved. *Rippe & Kingston Co., PSC v. Kruse*, 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, ¶ 21.

**Waiver of Arbitration Rights –
Standard of Review**

{¶19}  Before we address the question of whether the trial court properly determined that appellants waived their right to arbitration in this case, we must first determine the standard of review we apply.  The parties have been unable to agree on the appropriate standard of review.  Appellants argue that the standard of review for enforceability of an arbitration agreement and the waiver of those rights is de novo, citing our decision in *Philpott v. Pride Technologies of Ohio, LLC,* 1st Dist. Hamilton No. C-140730, 2015-Ohio-4341, ¶ 13.  In that case, this court said:

> [w]here the enforceability of an arbitration agreement raises questions as to whether a party's actions constitute a waiver of the right to arbitrate as a matter of law, or as to whether an agreement to arbitrate is unconscionable, we review the trial court's order de novo.

(Citations omitted.) *Id.*

{¶20}  Fries, on the other hand, argues that the standard of review is abuse of discretion, citing the decision of the Tenth Appellate District in *Fravel v. Columbus Rehab. & Subacute Inst.*, 2015-Ohio-5125, 53 N.E.3d 953, ¶ 9 (10th Dist.). In that case, the court said that "[t]he issue whether appellants have waived any right to arbitration is fact driven and reviewed for an abuse of discretion." *Id.*

{¶21}  Other appellate districts that have addressed the issue have held that the standard of review is an abuse of discretion.  " '[T]he question of waiver is usually a fact-driven issue and an appellate court will not reverse' the trial court's decision 'absent a showing of an abuse of discretion.' "  *White v. Smith*, 2d Dist. Greene No. 2012-CV-1135, 2015-Ohio-1671, ¶ 23, quoting *Murtha v. Ravines of McNaughton Condominium Assn.*, 10th Dist. Franklin No. 09AP-709, 2010-Ohio-1325, ¶ 20.  The

Third Appellate District reached the same conclusion, citing another decision from the Tenth Appellate District. *U.S. Bank Natl. Assn. v. Allen*, 2016-Ohio-2766, 52 N.E.3d 1237, ¶ 13 (3d Dist.), citing *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, 939 N.E.2d 928, ¶ 17 (10th Dist.). The Fourth Appellate District reached the same result, again citing *Morris*. *Chrysler Fin. Servs. v. Henderson*, 4th Dist. Athens No. 11CA4, 2011-Ohio-6813, ¶ 24. The Fifth Appellate District reached the same conclusion, citing dicta from this court in which we noted that the question of waiver of an arbitration agreement is reviewed under an abuse-of-discretion standard because those claims involve questions of fact, not law. *Pellegrini v. Codecon, L.L.C.*, 5th Dist. Stark No. 2015 CA 00001, 2015-Ohio-4266, ¶ 25, citing *Dunkelman v. Cincinnati Bengals, Inc.*, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198, ¶ 18 (1st Dist.). The remaining appellate districts have agreed with this position. *See Buyer v. Long*, 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, ¶ 17; *Hoppel v. Feldman*, 7th Dist. Columbiana No. 09 CO 34, 2011-Ohio-1183, ¶ 46; *Neel v. A. Perrino Constr., Inc.*, 8th Dist. Cuyahoga No. 105366, 2018-Ohio-1826, ¶ 32; *Milling Away, L.L.C. v. Infinity Retail Environments, Inc.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, ¶ 7; *EMCC Invest. Ventures v. Rowe*, 11th Dist. Portage No. 2011-P-0053, 2012-Ohio-4462, ¶ 18; *Middletown Innkeepers, Inc. v. Spectrum Interiors*, 12th Dist. Butler No. CA2004-01-020, 2004-Ohio-5649, ¶ 12.

{¶22} Having determined that every appellate district in Ohio has held that the standard of review for deciding if a trial court properly found waiver of an arbitration right is an abuse of discretion, we return to our decision in *Philpott*. In that case, this court said that questions of whether a party's actions constituted a waiver of the right to arbitrate or whether the agreement to arbitrate is unconscionable are reviewed by this court de novo. *Philpott*, 1st Dist. Hamilton No. C-140730, 2015-Ohio-4341, at ¶ 13. For that proposition, this court cited *Taylor*

*Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 27, and *Snider v. S. Forty Homes, Inc.*, 5th Dist. Muskingum No. CT2007-0027, 2008-Ohio-385, ¶ 8. We will consider each case in turn.

{¶23} In *Taylor Bldg. Corp. of Am.*, the Ohio Supreme Court addressed only the issue of whether an arbitration clause was unconscionable. The appellant had argued that the standard of review should be an abuse of discretion because of the strong policy in favor of arbitration. *Taylor* at ¶ 36. The court did not agree, noting that a determination of whether a written contract is unconscionable is an issue of law. *Taylor* at ¶ 35, citing *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.*, 67 Ohio St.2d 91, 98, 423 N.E.2d 151 (1981). The court noted that courts review questions of law de novo. *Taylor* at ¶ 35, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 9. The court further noted that federal courts, which Ohio courts may look to for guidance on issues of arbitration, have also applied de novo review to issues of contract interpretation and enforceability of an arbitration clause alleged to be unconscionable. *Taylor* at ¶ 35, citing *Edwards v. HOVENSA, L.L.C.*, 497 F.3d 355, 362-363 (3d Cir.2007). None of these cases support the proposition that the decision of a trial court regarding whether a party has waived a right to arbitrate is reviewed de novo.

{¶24} The second case relied on in *Philpott* was a decision from the Fifth Appellate District which did address the issue of waiver. *See Snider*. In the paragraph cited in *Philpott*, the *Snider* court said that "[a] trial court's grant or denial of a stay based solely upon questions of law, however, is reviewed under a de novo standard." *Snider* at ¶ 8, citing *Fortune v. Castle Nursing Homes, Inc.,* 5th Dist. Holmes No. 05 CA 1, 2005-Ohio-6195. But the *Snider* court went on in the next sentence to say, "Whether the contractual right to arbitration has been waived is a

13

mixed question of fact and law." *Snider* at ¶ 8, citing *Buyer*, 6th Dist. Fulton No. F-05-12, 2006-Ohio-472. Notably, the *Buyer* court utilized an abuse-of-discretion standard when analyzing the issue of a party's waiver of an arbitration right. *See Buyer* at ¶ 17 ("we cannot say that the trial court abused its discretion in finding that appellee had not waived his right to arbitration").

{¶25} After considering the jurisprudence from our sister districts, and revisiting the analysis the court employed in *Philpott*, we conclude that the appropriate standard of review when considering a trial court's determination that a contractual right to arbitrate a dispute has been waived is an abuse of discretion. In a case predating *Philpott* and cited therein for another proposition, this court had utilized an abuse-of-discretion standard when considering whether a party had waived his or her right to arbitrate. *Hilton v. Mill Rd. Const. II, Ltd.*, 1st Dist. Hamilton No. C-030200, 2003-Ohio-7107, ¶ 5, citing *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 701 N.E.2d 1040 (3d Dist.1997). The court later affirmed, in dicta, that this was the case. *Dunkelman*, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198, at ¶ 18 (noting that an abuse of discretion is the proper standard of review when considering waiver or fraud in the factum). To the extent that *Philpott* holds otherwise, we overrule that decision.

**Waiver of Arbitration Right**

{¶26} A contractual arbitration clause "is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998). A waiver of the contractual right to arbitrate may arise by implication from a party's active participation in prosecuting or defending against a claim in litigation or from any acts that are otherwise

inconsistent with the party's right to proceed with arbitration. *First Fin. Sav. Assn. v. Hillsmith Const. Co.*, 1st Dist. Hamilton No. C-880260, 1989 WL 65864, *1 (June 21, 1989).

{¶27}   Given Ohio's public policy favoring arbitration, the party asserting that the right to arbitrate has been waived bears the burden of proving waiver. *Murtha*, 10th Dist. Franklin No. 09AP-709, 2010-Ohio-1325, at ¶ 20.

{¶28}   In determining whether the totality of the circumstances supports a finding of waiver, a court may consider such factors as:

> 1) any delay in the requesting party's demand to arbitrate * * *; 2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; 3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and 4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts.

*Philpott*, 1st Dist. Hamilton No. C-140730, 2015-Ohio-4341, at ¶ 16, citing *Harsco*, 122 Ohio App.3d at 414, 701 N.E.2d 1040; *see Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. Franklin No. 10AP-353, 2011-Ohio-80, ¶ 21; *U.S. Bank Natl. Assn.*, 2016-Ohio-2766, 52 N.E.3d 1237, at ¶ 14. "Waiver attaches where there is active participation in a lawsuit evincing an acquiescence to proceeding in a judicial forum." *Fravel*, 2015-Ohio-5125, 53 N.E.3d 953, at ¶ 13, quoting *Tinker v. Oldaker*, 10th Dist. Franklin No. 03AP-671, 2004-Ohio-3316, ¶ 21.

{¶29}   The first factor to consider is whether there was a delay before seeking arbitration.  In this case, 94 days was not a delay sufficient to constitute a

waiver of the right to arbitrate. *See Harsco* at 416 (delay of three months was insufficient to demonstrate that defending party had waived the right to arbitrate); *Milling Away, L.L.C.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, at ¶ 14 (six-month delay before seeking arbitration was insufficient to show waiver where only minimal discovery was conducted prior to seeking a stay).

{¶30} The second factor to consider is the extent to which the party seeking arbitration has participated in the litigation prior to seeking arbitration. In this case, appellants' participation in the litigation prior to seeking the stay was insufficient to allow us to conclude that they waived their right to arbitrate. Other than pleadings seeking additional time to respond to discovery, appellants took only one deposition. "[E]ngaging in discovery will not necessarily result in waiver of arbitration rights." *Griffith v. Linton*, 130 Ohio App.3d 746, 753, 721 N.E.2d 146 (10th Dist.1998), citing *Williams v. Katten, Muchin & Zavis*, 837 F.Supp. 1430, 1442 (N.D.Ill.1993); *Harsco* at 416 (no waiver where "very limited discovery took place and a limited number of depositions were conducted"). Discovery must be extensive to constitute a waiver. *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975).

{¶31} The third factor for the court to consider is whether appellants invoked the jurisdiction of the trial court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings. In this case, the verified complaint was filed on May 19, 2015. Appellants filed their motion to refer the matter to arbitration 94 days later on August 21. During that time, appellants filed a motion for an extension of time to answer Fries's requests for discovery, an additional pleading relating to that issue, and a motion to stay discovery. Additionally, Fries's deposition was taken by Thomas Grossmann. Appellants did not file a pleading that made a claim invoking the court's jurisdiction.

{¶32} The limited discovery conducted in this case was insufficient to demonstrate waiver of the right to arbitrate. *Compare Milling Away, L.L.C.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, at ¶ 7 (although the parties exchanged several motions with regard to the pleadings, the record reflects that only minimal discovery occurred before Infinity sought the stay); *Harsco*, 122 Ohio App.3d at 416, 701 N.E.2d 1040 (very limited discovery took place and a limited number of depositions were conducted) *with Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir.1992) (finding waiver after noting that defendants took depositions of all of the named plaintiffs); *United States ex rel. Duo Metal & Iron Works, Inc. v. S.T.C. Constr. Co.*, 472 F.Supp. 1023, 1025 (E.D.Pa.1979) (finding waiver after plaintiff spent considerable effort and expense in discovery for 19 months).

{¶33} Finally, we consider whether the prior inconsistent acts of appellants would prejudice the nonmoving party. Fries has not shown how the delay of 94 days has prejudiced him in this litigation. While it is true that there has been significant litigation after the motion for a stay was filed, we consider prejudice up to the point when the stay was sought. During the three months before the motion to stay was filed, Fries sat for a four-hour deposition and had to respond to a few requests for additional time to respond to the discovery motions that had been filed. This is insufficient to show that he was prejudiced by the delay.

{¶34} "Because of the strong public policy in favor of arbitration, the heavy burden of proving waiver of the right to arbitration is on the party asserting waiver." *Griffith*, 130 Ohio App.3d at 751, 721 N.E.2d 146. A court will not lightly infer waiver of a right to arbitrate. *U.S. Bank Natl. Assn.*, 2016-Ohio-2766, 52 N.E.3d 1237, at ¶ 14, citing *Harsco*, 122 Ohio App.3d at 415, 701 N.E.2d 1040. On the state of this record, we cannot conclude Fries demonstrated appellants' actions were inconsistent

17

with their right to arbitrate. Thus, we hold that the trial court abused its discretion in finding that appellants waived their right to arbitrate. We sustain appellant's second assignment of error.

### Motion to Stay Pending Arbitration – Standard of Review

{¶35} In their third and fourth assignments of error, appellants claim that the trial court erred when it denied their request to compel arbitration, finding that it could not determine whether the allegations in the action fell within the scope of the arbitration agreement. As with the previous assignment of error, the parties fail to agree on the standard of review.

{¶36} Appellants argue that our standard of review is de novo, citing our decision in *Rippe,* 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, at ¶ 20. Fries argues that the standard of review is an abuse of discretion, citing a number of cases from other appellate districts. *See, e.g., Seyfried v. O'Brien*, 8th Dist. Cuyahoga No. 104212, 2017-Ohio-286, ¶ 18; *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.,* 126 Ohio App.3d 251, 254, 710 N.E.2d 299 (3d Dist.1998).

{¶37} Traditionally, when confronted with appeals from decisions on motions to stay pending arbitration, appellate courts apply an abuse-of-discretion standard. *See Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, 939 N.E.2d 928, at ¶ 15; *see also Rippe* at ¶ 14 (an order granting or denying a stay of trial pending arbitration is reviewed under an abuse-of-discretion standard). But deciding the discrete issue of whether a controversy falls within the provisions of an arbitration clause is another matter. "Whether a controversy is arbitrable under a contract requires the court to invoke principles of contract interpretation, and this presents a question of law, which we review de novo." *Rippe* at ¶ 20, citing *Dunkleman*, 158 Ohio App.3d 604, 2004-Ohio-6425, 821 N.E.2d 198, at ¶ 19-20; *Hudson v. John*

18

*Hancock Fin. Servs.*, 10th Dist. Franklin No. 06AP-1284, 2007-Ohio-6997, ¶ 8 (the decision is subject to de novo review because such cases generally turn on issues of contractual interpretation).

{¶38} The cases cited by Fries on this point support this conclusion. While the Eighth Appellate District stated that the decision to grant a stay is generally a matter within the trial court's discretion, "when reviewing the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration, a de novo standard applies." *Seyfried* at ¶ 18. And the Third Appellate District has likewise concluded, in another matter, that "[c]ases, such as this, that involve contractual interpretation or statutory application are reviewed de novo, giving appropriate deference to the trial court's findings of fact." *Blanchard Valley Health Sys. v. Canterbury Holdings, Inc.*, 3d Dist. Hancock No. 5-12-08, 2012-Ohio-5134, ¶ 12.

### Arbitrability of Claims

{¶39} No party has disputed that the membership agreement is a binding, enforceable contract. Further, no party has argued any basis for invalidating the arbitration provision. The issue remaining for this court is whether the verified complaint filed by Fries contains claims that the parties had agreed to submit to arbitration.

{¶40} When making this determination, we are not limited to the form in which the causes of action have been pled. As the Ohio Supreme Court noted, "[a]rbitration is not limited to claims alleging a breach of contract, and creative pleading of claims as something other than contractual cannot overcome a broad arbitration provision. The overarching issue is whether the parties agreed to arbitrate the issue." *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 19. "Under this standard, [e]ven real torts

can be covered by arbitration clauses [i]f the allegations underlying the claims 'touch matters' covered by the [agreement]." (Citations omitted.) *Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St.3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 24.

{¶41} Ohio courts may determine whether a claim is within the scope of an arbitration agreement by " 'ask[ing] if [the claim] could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.' " *Id.*, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003). "Since courts must sift through pleadings to determine whether a cause of action labeled as a tort or statutory claim is essentially a cause of action based upon the contract, we agree with *Fazio* that 'a proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue.' " *Academy of Medicine* at ¶ 24, quoting *Fazio*.

{¶42} The arbitration clause in the operating agreement states that the parties will arbitrate "any dispute regarding the interpretation of this Agreement or the rights of the Members hereunder (but not as to any business decisions to be made by the Board of Managers)." Fries's verified complaint lists six causes of action: breach of fiduciary duty, unjust enrichment, conversion, right of reimbursement, fraudulent concealment, and civil conspiracy. In examining the claims that make up the six causes of action, we find that they revolve around two sets of core operating facts. The first three causes of action arise from his status as a member of Greg G. Wright & Sons, the second set of claims revolves around his having signed as a personal guarantor on the lease agreement that resulted in litigation. We will consider the allegations of each in turn.

### The Membership Claims

{¶43} In his first cause of action, Fries makes a claim for breach of fiduciary duty. He complains that "[a]s members of GGWS, M. Grossmann, T. Grossmann,

and any Doe Defendants holding a fiduciary interest in GGWS (collectively, the "Owner Defendants") owe a fiduciary duty of loyalty, a duty of care, and an obligation of good faith and fair dealing to Mr. Fries, who owns a 36% interest in GGWS." In the context of that relationship, Fries claims that the Owner Defendants improperly refused to permit him to examine the books of Greg G. Wright & Sons, refused to acknowledge his ownership interest in Greg G. Wright & Sons, divested or attempted to divest him of his ownership interest without notice or compensation, failed to distribute his corporate earnings, and failed to provide a defense for him in the lease litigation.

{¶44} In his second cause of action, Fries makes a claim for unjust enrichment. He claimed that the Owner Defendants divested him of his ownership interest and unjustly retained that interest for themselves and failed to distribute net profits to him in proportion to his ownership interest.

{¶45} In his third cause of action, Fries makes a claim for conversion. The claim likewise relies on his status as a member and the terms of the operating agreement. His claim for conversion is premised on the same assertion as the unjust enrichment claim and, in part, the breach-of-fiduciary-duty claim: that the Owner Defendants divested him of his ownership interest without providing compensation.

{¶46} Each of the claims listed above arises from the fact of Fries's status as a member of Greg G. Wright & Sons, his claimed ownership interest therein, and the rights due to him as a result of his membership. The operating agreement sets forth that members are entitled to examine "all accounts, books, and other relevant company documents" upon reasonable request. The claims made by Fries that constitute his breach-of-fiduciary-duty, unjust-enrichment, and conversion causes of action relate to his rights as a member and fall within the scope of the agreement's arbitration clause.

**The Guarantor-Litigation Claims**

{¶47} In his fourth cause of action, Fries claims that he has a right of reimbursement against appellants. The premise of his argument is that he was a personal guarantor for Greg G. Wright & Sons in a series of equipment leases, Greg G. Wright & Sons defaulted on those leases, Greg G. Wright & Sons has retained the equipment, and he is entitled to be reimbursed by Greg G. Wright & Sons for the amount of the leases.

{¶48} In his fifth cause of action, Fries claims that Greg G. Wright & Sons and the Owner Defendants engaged in fraudulent concealment. He claims that Tom Grossmann entered into a relationship with CFK Ohio Assets Acquisition, the plaintiff in the lease litigation, "for the purpose of avoiding liability and resolving the Lease Litigation" by shifting the obligations to Fries as guarantor "without regard to [Greg G. Wright & Sons's] co-defendant and member, Mr. Fries." Fries claims that Greg G. Wright & Sons and the Owner Defendants had a duty to disclose that relationship, and concealed it in order to deceive Fries.

{¶49} In his final cause of action, Fries claims that Greg G. Wright & Sons, the Owner Defendants, and CFK Ohio Assets Acquisition engaged in a civil conspiracy to shield Greg G. Wright & Sons from liability in the lease litigation, with the result that liability would be found solely against Fries.

{¶50} These claims represent allegations that do not arise from the operating agreement. They can be "maintained without reference to the contract or relationship at issue." *Academy of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 24.

{¶51} In *Academy of Medicine*, several managed health-care organizations ("HMOs") were sued by numerous physicians for antitrust violations on allegations that the HMOs had conspired to fix and lower the insurance reimbursement rates

paid by the HMOs. The HMOs sought to compel arbitration pursuant to an arbitration agreement found within the provider agreements signed by the physicians. The court noted that

> [t]he allegations that the HMOs, which controlled a majority of the health-care market in this region, colluded to fix reimbursement rates to medical practitioners arose out of actions that occurred prior to the existence of the underlying provider agreements or business relationships between the doctors and HMOs. The allegations did not even presume the existence of an underlying provider agreement.

*Id.* at ¶ 7, quoting *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 155 Ohio App.3d 310, 2003-Ohio-6194, 800 N.E.2d 1185, ¶ 6 (1st Dist.). The Ohio Supreme Court affirmed this court's adoption of the *Fazio* test, determined that it had been properly applied, and concluded that the dispute fell outside the arbitration agreement. *Id.* at ¶ 30.

{¶52} Similarly, the Eighth Appellate District addressed the question of whether claims arising from the sexual assault of an employee by a manager fell within the arbitration agreement the employee executed. The court concluded that the claims "exist[ed] independently of the employment relationship as they may be maintained without reference to the contract or relationship at issue." *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 65 (8th Dist).

{¶53} The claims made by Fries in his fourth, fifth, and sixth causes of action do not arise from the operating agreement or Fries's status as a member. They arise from his status as a personal guarantor on the lease agreements between Greg G. Wright & Sons and CFK Ohio Assets Acquisition.

{¶54} On the other hand, it could be said that Fries would not have signed the leases as a personal guarantor but for his status as a member of Greg G. Wright &

Sons. But the *Fazio* test as utilized by this court, and affirmed by the Ohio Supreme Court, is not a but-for test. In *Academy of Medicine*, the physicians would not have been subjected to claimed unfair reimbursement rates but for the fact that they had entered into the provider agreements with the HMOs. As this court noted, the "express elements of an antitrust claim do not depend, as a matter of law, on the provider agreements between the individual doctors and HMOs." *Academy of Medicine*, 155 Ohio App.3d 310, 2003-Ohio-6194, 800 N.E.2d 1185, at ¶ 5.

{¶55} Similarly, in *Arnold*, the employee who sued was in a position to be sexually assaulted by her manager because she was an employee and on the premises. But the court noted that "[a] patron may, for example based on the asserted facts, pursue an action for sexual harassment per the Ohio Civil Rights Act." *Arnold* at ¶ 66. The fact that the individual, because of the contractual relationship, is placed in a position to be subjected to conduct for which the law may provide a remedy does not mean that the claims that arise therefrom are "dependent on the contract or relationship at issue." *Id.* at ¶ 65.

{¶56} Any individual could have signed the lease agreements as guarantor, as Fries claims to have done. Any individual having done so could then have been brought into litigation relating to that lease from which the remainder of the claims arise. As with the physicians in *Academy of Medicine*, "[t]he allegations did not even presume the existence of an underlying * * * agreement." *Academy of Medicine* at ¶ 6. These claims can be maintained without reference to the contract or relationship, and they do not rely on the relationships or obligations created by the agreement. Therefore, they fall outside the scope of the arbitration clause in the operating agreement.

## Ambiguity of Claims

{¶57}   In its decision, the trial court stated that it was partially unable to determine whether the claims involved in this case fell within the arbitration clause because the record had not been developed through discovery.  The trial court stated:

[w]hat portion of the plaintiff's claims, if any, that [are] subject to arbitration is unknown.  The arbitration clause is narrow and it may be that the plaintiff's claims fall under the exclusion from arbitration.  No one knows because almost no discovery from the defendants has been produced.

* * *

[D]iscovery must proceed to determine whether this case should go to arbitration or not.  The defendants refuse to give discovery.  The burden on this motion is on the defendants and by failing to cooperate in the slightest way in terms of giving discovery responses there is nothing in the record to warrant the granting of the Motion to Arbitrate.

{¶58}   The flaw in the trial court's analysis on this issue is that the measure of the arbitrability of the claims is their recitation in the complaint.  As the Ohio Supreme Court noted, "[t]he *Fazio* test does not act as a detriment to arbitration.  * * * It allows courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented." *Acad. of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 29.

{¶59}   In this case, the verified complaint is a simple recitation of Fries's claims against appellants.  The claims are not ambiguous, and their relationship to the operating agreement and the arbitration provision has been set forth above.  There was no need for additional discovery to determine the application of the

arbitration clause in this case. *See Rippe*, 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, at ¶ 52 (there is no need for discovery where the enforceability or applicability of the arbitration provision is discernable).

**Lack of Remedy**

{¶60}   We note that one of the reasons cited by the trial court for refusing to grant the motion to stay was the trial court's belief that the arbitration could not result in the award of damages. The trial court noted that "the arbitration clause in question * * * expressly provides that the arbitrator shall award no damages." As a result, the trial court stated that "[t]he damages trial, which as I have noted will take place regardless of who prevails at arbitration, will involve the same evidence is in the liability phase of the trial. It is ridiculous to do that twice."

{¶61}   But the arbitration clause does not preclude the award of all damages. The clause states that "[t]he arbitrator is not empowered to award consequential or punitive damages under any circumstances." A provision in an arbitration agreement by which parties waive their right to seek punitive damages is commercially reasonable. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 35. The arbitrator is empowered to award contractual damages for the claims subject to arbitration, and this is the recourse for which the parties contracted.

**Parties to Arbitration**

{¶62}   Now that we have determined which claims are subject to arbitration, we must next determine which parties are bound to participate in the arbitration. Because arbitration is a matter of contract, a party cannot be forced to arbitrate a dispute that it has not agreed to submit to arbitration. *Taylor v. Ernst & Young, LLP*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20.

26

{¶63}   The parties against whom Fries made claims in his first three causes of action are Margaret Grossmann, Thomas Grossmann, and Greg G. Wright & Sons, LLC.[1]   The verified complaint alleges that Margaret Grossmann and Thomas Grossmann are members and managers of Greg G. Wright & Sons.  As signatories to the operating agreement, it is clear that Fries and Margaret Grossmann have the right to invoke the arbitration clause.

{¶64}   Greg G. Wright & Sons and Thomas Grossmann are not signatories to the operating agreement.  But Ohio courts have recognized that "arbitration may be compelled by a nonsignatory against a signatory due to the 'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract * * * and [the fact that] the claims were "intimately founded in and intertwined with the underlying contract obligations." ' " *Short v. Resource Title Agency, Inc.*, 8th Dist. Cuyahoga No. 95839, 2011-Ohio-1577, ¶ 15, quoting *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 14 (8th Dist.), quoting *Thomson-CSF, S.A. v. Am. Arbitration Assn.*, 64 F.3d 773, 776 (2d Cir.1995).  Additionally, a nonsignatory to an arbitration agreement may be bound by the arbitration agreement under a variety of ordinary contractual and agency related legal theories, including but not limited to estoppel, incorporation by reference, agency, veil-piercing/alter ego, and third-party beneficiary.  *See Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 629 (6th Cir.2003), citing *Thomson-CSF*; *Cleveland-Akron-Canton Advertising Coop. v.*

---

[1] The remaining appellants—CFK Ohio Asset Acquisitions, LLC, and Charles Fischer—are only involved in claims relating to causes of action that we have found are not subject to arbitration.

*Physician's Weight Loss Ctrs. of Am., Inc.*, 184 Ohio App.3d 805, 2009-Ohio-5699, 922 N.E.2d 1012, ¶ 18 (8th Dist.).

{¶65} In this case, both Thomas Grossmann and Greg G. Wright & Sons are closely tied to the operating agreement. Thomas Grossmann is alleged to be a member and manager of Greg G. Wright & Sons. Greg G. Wright & Sons itself is an obvious third-party beneficiary of the operating agreement. Therefore, both Thomas Grossmann and Greg G. Wright & Sons were entitled to seek relief pursuant to the arbitration clause in the operating agreement.

{¶66} Fries argues that since appellants claim that he is no longer a member of Greg G. Wright & Sons, there is at least a question as to whether he is bound by the arbitration agreement. This position is incorrect as, even if Fries is currently not a member of Greg G. Wright & Sons, none of the parties dispute that he was a member. Therefore, he had agreed to be bound by the terms of the operating agreement, including the agreement to arbitrate disputes arising from membership. *See Cirino v. Christian & Timbers, Inc.*, 116 Ohio App.3d 818, 820, 689 N.E.2d 583 (8th Dist.1996) (termination of former employee's employment did not terminate his employment agreement with his former employer; therefore subsequent wrongful and retaliatory-discharge claims were subject to arbitration pursuant to agreement's arbitration clause).

### Claims and Parties Subject to Arbitration

{¶67} In summary, Fries's claims relating to his first three causes of action—breach of fiduciary duty, unjust enrichment, and conversion—are claims that arise from Fries's status as a member of Greg G. Wright & Sons, his claimed ownership interest therein, and the rights resulting from his membership. They could not be made without reference to the operating agreement, and are, in fact, grounded therein. Those claims are subject to arbitration. Fries, Margaret Grossmann,

28

Thomas Grossmann, and Greg G. Wright & Sons, LLC, are entitled to enforce the arbitration provision.

{¶68} But Fries's claims relating to his second three causes of action—right of reimbursement, fraudulent concealment, and civil conspiracy—do not arise from the operating agreement or Fries's status as a member. The claims could be maintained without reference to the contract or relationship at issue. CFK Ohio Asset Acquisitions, LLC, and Charles Fischer are involved only in claims relating to those causes of action, which are not subject to arbitration.

{¶69} The result in this case preserves Ohio's public policy favoring arbitration as a method to settle disputes, while ensuring that the parties are not compelled to arbitrate claims for which they had not bargained. *See Taylor*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, at ¶ 20. The claims that are subject to the arbitration clause in the operating agreement are those that arose from that agreement involving only the parties directly related to that agreement. Since the lease-litigation claims are causes of action that do not arise from the operating agreement and involve parties who are strangers to the operating agreement, they will be litigated after the arbitration has concluded.

{¶70} We sustain appellants' third and fourth assignments of error in part and overrule them in part.

### Motion to Compel Discovery

{¶71} In their final assignment of error, appellants claim that the trial court erred when it granted Fries's motion to compel discovery. But we lack jurisdiction to consider that issue.

{¶72} Generally, discovery orders are neither final nor appealable. *Grace v. Mastruserio*, 182 Ohio App.3d 243, 2007-Ohio-3942, 912 N.E.2d 608, ¶ 33 (1st Dist.). An exception exists for some cases in which the discovery sought involves the

disclosure of privileged material, but even those cases are limited to orders that satisfy the "provisional remedy" criteria outlined in R.C. 2505.02(A)(3). *See Summitbridge Natl. Invests, L.L.C. v. Ameritek Custom Homes, Inc.*, 1st Dist. Hamilton No. C-120476, 2013-Ohio-760, ¶ 6; *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 166 Ohio App.3d 118, 2006-Ohio-1347, 849 N.E.2d 297, ¶ 8 (1oth Dist.). Without such special circumstances

> discovery techniques are pretrial procedures used as an adjunct to a pending lawsuit. They are designed to aid in the final disposition of the litigation, and are, therefore, to be considered as an integral part of the action in which they are utilized. They are not "special proceedings," as that phrase is used in R.C. 2505.02.

*Kennedy v. Chalfin*, 38 Ohio St.2d 85, 89, 310 N.E.2d 233 (1974).

{¶73} Appellant's arguments relating to the order compelling discovery relate only to the propriety of discovery prior to arbitration. They did not argue that the discovery in question implicated an exception to the general rule that discovery rulings are not appealable. Therefore, we lack jurisdiction to address the arguments presented in the fifth assignment of error, and we do not address them.

### Conclusion

{¶74} For the reasons set forth above, we affirm the decision of the trial court in part, reverse it in part, and remand the cause for further proceedings. On remand, the trial court shall stay the entire proceedings while the parties arbitrate the first three causes of action. *See Rippe*, 1st Dist. Hamilton No. C-130587, 2014-Ohio-2428, at ¶ 21 (the court must stay the entire proceeding, despite the presence of nonarbitrable claims); *Bright Future Partners, Inc. v. Proctor & Gamble Distrib., LLC*, 1st Dist. Hamilton No. C-160589, 2017-Ohio-4145, ¶ 22 (claims involving nonsignatories to the arbitration agreement will be stayed while arbitrable claims are

resolved). The trial court is free to set a reasonable timeframe in which it can expect the parties to have completed the arbitration of those claims. If the arbitration has not concluded after that time has elapsed, the trial court may conduct a hearing to determine whether the delay in arbitration can be assigned to one or more of the parties and whether the conduct constitutes a forfeiture of the right to proceed with arbitration. Once the arbitration is concluded, the trial court shall proceed with the remaining claims.

{¶75} We remand this cause to the trial court for proceedings consistent with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM** and **ZAYAS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.