[Cite as *Zellner v. Prestige Gardens Rehab. & Nursing Ctr.*, 2019-Ohio-595.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

BETHANY ZELLNER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF GLENNA A. ZELLNER,                              CASE NO.  14-18-14

      PLAINTIFF-APPELLANT,

      v.

PRESTIGE GARDENS REHABILITATION
AND NURSING CENTER, ET AL.,                    O P I N I O N

      DEFENDANTS-APPELLEES.

Appeal from Union County Common Pleas Court
Trial Court No. 2018-CV-0062

**Judgment Affirmed**

**Date of Decision:    February 19, 2019**

APPEARANCES:

    *Blake A. Dickson* for Appellant

    *Keona Padgett* for Appellees

**PRESTON, J.**

{¶1} Plaintiff-appellant, Bethany Zellner ("Zellner"), as the personal representative of the estate of Glenna Zellner ("Glenna"), appeals the July 3, 2018 judgment of the Union County Court of Common Pleas granting the motion to stay pending arbitration of defendants-appellees, Prestige Gardens Rehabilitation and Nursing Center, Marysville Gardens Rehabilitation and Health Care LLC, Chickiestrong Marysville Gardens LLC, Garden Healthcare Group LLC, Joshua Farkovitz, David Gamzeh, Akiva Glatzer, and various John Does (collectively the "defendants"). For the reasons that follow, we affirm.

{¶2} This case arises from Glenna's death following her admission to Prestige Gardens Rehabilitation and Nursing Center ("Prestige Gardens"). Glenna was admitted to Prestige Gardens on April 18, 2017.[1] (*See* Doc. No. 26). (*See also* Doc. No. 23, Defendants' Ex. A). Glenna suffered from dementia and Parkinson's disease, and as a result, she needed assistance performing basic daily tasks, including bathing and dressing. (*See* Doc. No. 26). She also required "extensive assistance to walk and transfer herself." (*Id.*). According to Zellner, although Glenna was identified "as a high fall risk" by Prestige Gardens's staff, "no individualized interventions were put in place to prevent [Glenna] from suffering

---

[1] Glenna's date of admission to Prestige Gardens is supported by the record. (*See* Doc. No. 23, Defendants' Ex. A). However, the remaining events described in this paragraph, although alleged by Zellner in the trial court, are largely unsupported by evidence in the record.

falls * * *." (*Id.*). On April 21, 2017, a nurse found Glenna on her back on the floor of her room complaining of pain in her right hip. (*See id.*). Glenna was then transferred to an area hospital where she was diagnosed with a hip fracture. (*See id.*). After undergoing surgery to repair her fractured hip, Glenna was discharged from the hospital and placed under hospice care. (*See id.*). Glenna died soon thereafter on May 8, 2017. (*See id.*).

{¶3} On April 9, 2018, Zellner filed a complaint asserting various claims for personal injury, wrongful death, medical negligence, ordinary negligence, and violations of Ohio's Nursing Home Residents' Bill of Rights. (Doc. No. 2). The defendants filed their answer on May 9, 2018. (Doc. No. 21). On May 16, 2018, Zellner filed an affidavit of merit. (Doc. No. 22). On May 31, 2018, the defendants filed a motion to stay the proceedings pending arbitration pursuant to an arbitration agreement signed by Glenna's power of attorney, her husband, Jack Zellner ("Jack"), in the course of admitting Glenna to Prestige Gardens on April 18, 2017. (Doc. No. 23). (*See* Doc. No. 23, Defendants' Ex. A).

{¶4} On June 11, 2018, the defendants filed a motion for a protective order. (Doc. No. 25). On June 13, 2018, Zellner filed a combined motion for extension of time to respond to the defendants' motion to stay proceedings pending arbitration, motion to compel, and brief in opposition to the defendants' motion for a protective order. (Doc. No. 26). On June 26, 2018, the defendants filed a combined

memorandum in opposition to Zellner's motion for extension of time and motion to compel. (Doc. No. 27).

{¶5} On July 3, 2018, the trial court granted the defendants' motion to stay the proceedings pending arbitration and stayed Zellner's action pending arbitration. (Doc. No. 28).

{¶6} On August 1, 2018, Zellner filed a notice of appeal. (Doc. No. 33). She raises three assignments of error.

### Assignment of Error No. I

**The Trial Court erred in permanently staying this case in favor of binding arbitration because the arbitration clause[2] is void, invalid, and unenforceable.**

{¶7} In her first assignment of error, Zellner argues that the trial court erred by staying the entire proceedings pending arbitration. Zellner advances five distinct arguments in support of this assignment of error. First, Zellner argues that the trial court erred by staying the action because the arbitration agreement is void, invalid, and unenforceable as it is procedurally and substantively unconscionable and because it fails to comply with R.C. 2711.23. In addition, Zellner argues that the trial court erred by staying the action because the defendants waived their rights to enforce the arbitration agreement. Finally, Zellner contends that the trial court

---

[2] Throughout her appellate brief, Zellner refers to the document setting forth the agreement to arbitrate as an "arbitration clause." However, the "arbitration clause" is a three-page document with eight subparts and a signature block that spans two pages. (*See* Doc. No. 23, Defendants' Ex. A). Accordingly, except when directly quoting Zellner's appellate brief, we will refer to the document as the "arbitration agreement."

erroneously stayed the proceedings as to all claims and all the defendants because (1) Zellner's wrongful-death claim is not arbitrable and (2) some of the defendants were neither party to the arbitration agreement nor in privity with a party to the arbitration agreement.

{¶8} "Typically, a decision to grant or deny a stay of proceedings pending arbitration is reviewed under an abuse-of-discretion standard." *Kellogg v. Griffiths Health Care Group*, 3d Dist. Marion No. 9-10-59, 2011-Ohio-1733, ¶ 9, citing *Morris v. Morris*, 189 Ohio App.3d 608, 2010-Ohio-4750, ¶ 15 (10th Dist.). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "'Furthermore, when a trial court makes factual findings, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference.'" *Loyer v. Signature Healthcare of Galion*, 3d Dist. Crawford No. 3-16-09, 2016-Ohio-7736, ¶ 7, quoting *Kellogg* at ¶ 9, citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 38 and *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995) (contract interpretation, a question of law, is reviewed de novo, "[u]nlike determinations of fact which are given great deference"). "'"However, a de novo standard of review is appropriate when the appeal presents a question of law."'" *Id.*, quoting *Spearman v. Am. Elec. Power Co., Inc.*, 3d Dist. Hardin No. 6-

14-13, 2015-Ohio-928, ¶ 13, quoting *Kellogg* at ¶ 9, citing *Morris* at ¶ 15 and *Barhorst, Inc. v. Hanson Pipe & Prods. Ohio, Inc.*, 169 Ohio App.3d 778, 2006-Ohio-6858, ¶ 10 (3d Dist.).

**{¶9}** "'Both the Ohio General Assembly and Ohio courts have expressed a strong public policy favoring arbitration.'" *U.S. Bank Natl. Assn. v. Allen*, 3d Dist. Paulding No. 11-15-09, 2016-Ohio-2766, ¶ 24, quoting *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 15, citing R.C. Chapter 2711, *Taylor Bldg.* at ¶ 27, and *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). ""'Arbitration is favored because it provides the parties thereto with a relatively expeditious and economical means of resolving a dispute.'"" *Id.*, quoting *Kelm v. Kelm*, 68 Ohio St.3d 26, 29 (1993), quoting *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 712 (1992). "'Arbitration also has the additional benefit of unburdening crowded court dockets.'" *Id.*, quoting *Hayes* at ¶ 15, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80, 83 (1986). "'In light of the strong presumption favoring arbitration, all doubts should be resolved in its favor.'" *Id.*, quoting *Hayes* at ¶ 15, citing *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, ¶ 18.

**{¶10}** "The General Assembly has endorsed the strong policy in favor of arbitration of disputes in R.C. 2711.01(A), which provides that an arbitration agreement 'shall be valid, irrevocable, and enforceable, except upon grounds that

exist at law or in equity for the revocation of any contract.'" *Hayes* at ¶ 16. R.C. 2711.02 provides for the indirect enforcement of arbitration agreements by allowing a party to an arbitration agreement to obtain a stay of litigation in favor of arbitration. *Villas Di Tuscany Condominium Assn., Inc. v. Villas Di Tuscany*, 7th Dist. Mahoning No. 12 MA 165, 2014-Ohio-776, ¶ 12, citing *Maestle v. Best Buy Co.*, 100 Ohio St.3d 330, 2003-Ohio-6465, ¶ 14, quoting *Brumm v. McDonald & Co. Secs., Inc.*, 78 Ohio App.3d 96, 100 (4th Dist.1992). R.C. 2711.02(B) provides:

> If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, provided the applicant for the stay is not in default in proceeding with arbitration.

"[A]n order under R.C. 2711.02(B) that grants or denies a stay of a trial pending arbitration 'is a final order and may be reviewed, affirmed, modified, or reversed on appeal pursuant to the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.'" *U.S. Bank Natl. Assn.* at ¶ 26, quoting R.C. 2711.02(C).

{¶11} We turn first to Zellner's argument that the trial court erred by staying the proceedings because the arbitration agreement is both procedurally and substantively unconscionable and thus unenforceable. Regarding procedural unconscionability, Zellner argues that the "process by which the arbitration clause was signed in this case was procedurally unconscionable" because the defendants "had all of the relevant experience and business acumen" and "drafted and had total control over the arbitration clause and the admissions paperwork." (Appellant's Brief at 15). Moreover, Zellner contends that the defendants, "the much stronger parties in this case, knew that Glenna Zellner and Jack Zellner were unable to reasonably protect their interests by reason of their inability to understand the concept of arbitration." (*Id.*). As to substantive unconscionability, Zellner argues that the "arbitration clause at issue * * * is a classic contract of adhesion," that it lacks "any specific rules that will be applied to the arbitration of claims," and that it "requires [Zellner] to front all arbitration costs, and states that she could ultimately be responsible for those costs." (*Id.* at 16-17). Zellner also notes that the fact that the arbitration agreement is titled "Attachment D," indicating that the agreement is part of a much larger document, is evidence of substantive unconscionability. (*Id.* at 16).

{¶12} "Unconscionability is a ground for revocation of an arbitration agreement." *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, at ¶ 19, citing *Taylor*

*Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 33.  "A contract is unconscionable when it is created through 'an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party.'"  *Yellow Book Sales v. Beamer*, 3d Dist. Union No. 14-11-18, 2012-Ohio-654, ¶ 24, quoting *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834 (2d Dist.1993).  "'The party asserting unconscionability of a contract bears the burden of proving that the agreement is *both* procedurally and substantively unconscionable.'"  (Emphasis added.) *Hayes* at ¶ 20, quoting *Taylor Bldg.* at ¶ 34, citing *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, ¶ 6 (9th Dist.) and *Collins* at 834, citing White & Summers, *Uniform Commercial Code*, Section 4-7, 219 (3d Ed.1988).  *See Hayes* at ¶ 30 ("A party challenging an arbitration agreement must prove a quantum of both procedural and substantive unconscionability."), citing *Taylor Bldg.* at ¶ 34.  This court reviews de novo whether an arbitration agreement is unconscionable.  *Hayes* at ¶ 21.

{¶13} "In determining whether an arbitration agreement is procedurally unconscionable, courts consider 'the circumstances surrounding the contracting parties' bargaining, such as the parties' "'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'"'"  *Id.* at ¶ 23, quoting *Taylor Bldg.* at ¶

44, quoting *Collins* at 834, quoting *Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich. 1976). Additional factors that may contribute to a finding of procedural unconscionability include:

> "'belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'"

*Id.* at ¶ 24, quoting *Taylor Bldg.* at ¶ 44, quoting 2 Restatement of the Law 2d, Contracts, Section 208, Comment d (1981). "All of the factors must be examined and weighed in their totality in determining whether an arbitration agreement is procedurally unconscionable." *Id.* at ¶ 30.

{¶14} On the other hand, "[a]n assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Id.* at ¶ 33, citing *John R. Davis Trust 8/12/05 v. Beggs*, 10th Dist. Franklin No. 08AP-432, 2008-Ohio-6311, ¶ 13 and *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75,

80 (2d Dist.1996). "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability." *Id.*, citing *John R. Davis Trust* at ¶ 13 and *Collins* at 834. However, the Supreme Court of Ohio has not adopted a "bright-line set" of factors for determining whether an arbitration agreement is substantively unconscionable. *Id.* Instead, "[t]he factors to be considered vary with the content of the agreement at issue." *Id.*

{¶15} The arbitration agreement in this case provides, in relevant part, as follows:

**ATTACHMENT D:**
**VOLUNTARY ARBITRATION AGREEMENT**

\* \* \*

1. General Provisions. By signing this Agreement, the Parties agree that, except as otherwise set forth herein, any action, claim, dispute or controversy of any kind, whether in contract, tort, statutory, common law, legal, equitable, or otherwise, during the term of the Admissions Agreement or hereafter arising between the parties in any way arising out of, pertaining to, or in connection with, the provision of health care services or any agreement between the Parties including, but not limited to, the scope of this Agreement with, and the arbitrability of,

-11-

any claim or dispute, against whomever made (including, to the full extent permitted by applicable laws, third parties who are not signatories to this Agreement) shall be resolved by binding arbitration administered by the American Arbitrators Association ("AAA"), under the AAA Rules and Procedures then in effect. * * *

* * *

4.      Arbitration Award and Fees. The award of costs of the arbitration shall be determined by the arbitrator in accordance with all applicable laws.  The administrative fee and arbitrator's compensation shall be initially advanced by the party requesting arbitration, but shall be allocated on the ratio of final award to each party over the total award in the final arbitration order.

* * *

8.      Right to Cancel Agreement. I understand that I do not have to sign this Agreement to receive health care services and that I may cancel by providing written notice of cancellation to the facility within thirty (30) days after signing this agreement.  Following such thirty day revocation period, revocation or cancellation of this agreement may only be made by mutual agreement of the parties in writing.

**THE RESIDENT UNDERSTANDS AND ACKNOWLEDGES THAT BY THE RESULT OF ENTERING INTO THIS AGREEMENT IS THAT ALL DISPUTES OR CLAIMS WHICH HE OR SHE MAY HAVE AGAINST THE FACILITY, CANNOT BE BROUGHT AS A LAWSUIT IN COURT OF LAW BEFORE A JUDGE OR JURY, AND INSTEAD AGREES THAT ALL SUCH DISPUTES OR CLAIMS WILL BE RESOLVED BY BINDING ARBITRATION.**

**THE UNDERSIGNED HAS READ, UNDERSTANDS AND AGREES TO BE LEGALLY BOUND BY THE TERMS AND CONDITIONS AS SET FORTH HEREIN.**

(Underlining, capitalization, and boldface sic.) (Doc. No. 23, Defendants' Ex. A).

**{¶16}** Under the facts presented here, we conclude that the arbitration agreement is not unconscionable. Specifically, because the arbitration agreement is comparable to arbitration agreements that various Ohio courts have sustained against claims of substantive unconscionability, we conclude that Zellner has failed to carry her burden of showing that the arbitration agreement is substantively unconscionable.

**{¶17}** First, rather than being a short clause buried in a larger contract, the arbitration agreement in this case is a separate, stand-alone document consisting of

-13-

eight subparts across three pages. *See Harrison v. Winchester Place Nursing & Rehab. Ctr.*, 10th Dist. Franklin No. 12AP-327, 2013-Ohio-3163, ¶ 54; *Manley v. Personacare*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶ 36. *See also Fortune v. Castle Nursing Homes, Inc.*, 164 Ohio App.3d 689, 2005-Ohio-6195, ¶ 33-34 (5th Dist.) (offering an example of an arbitration agreement in a medical setting that would likely not be found to be unconscionable), citing *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996). That the agreement is apparently "Attachment D" to a presumably much longer admissions agreement does not weigh strongly in favor of concluding that the arbitration agreement is substantively unconscionable. What is important is that the "inclusion of a binding-arbitration clause must be done in such a manner that the person signing the agreement is made aware of the existence of the provision and the importance of the right that he or she is waiving." *Fortune* at ¶ 32. Here, despite being an attachment to a larger contract, the arbitration agreement is clearly set off from any accompanying documents and is itself a separate contract. *See Harrison* at ¶ 54 (noting that an arbitration agreement was not substantively unconscionable in part because "[t]he ADR agreement is a separate, four-page document that is an attachment to the admission agreement. It is not a 'clause' buried amid the admission agreement."). Thus, the format of the document was sufficient to put Jack on notice of the existence of the agreement to arbitrate.

**{¶18}** In addition, the arbitration agreement clearly states that it is a voluntary agreement and that signing the agreement is not a precondition to receiving health care services. *See Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, at ¶ 43-44; *Harrison* at ¶ 36, 40, 54; *Manley* at ¶ 37. Although not determinative of substantive conscionability, the fact that the agreement is both characterized as voluntary in boldface, underlined, all-capitals lettering in the heading of the agreement and that it includes a clause that explicitly states that admission is not contingent on signing the arbitration agreement weighs against a finding of substantive unconscionability. *See Hayes* at ¶ 44; *Harrison* at ¶ 54; *Manley* at ¶ 37. Furthermore, the arbitration agreement provides that it may be cancelled within 30 days. As a result, Jack "was given an opportunity to think about [his] decision and, if unhappy with the agreement, the opportunity to reject the agreement. This 30-day period also provided [Jack] with an opportunity to discuss the matter with a family member or an attorney." *Manley* at ¶ 39. *See Harrison* at ¶ 54; *Fortune* at ¶ 33. Moreover, the arbitration agreement states in boldface, all-capitals lettering just above the signature block that, by executing the arbitration agreement, the right to bring a lawsuit in court before a judge or jury is being waived. "[W]aiver of the right to trial by jury is a necessary consequence of agreeing to have an arbitrator decide a dispute, and this aspect of an arbitration clause is not substantively unconscionable." *Hayes* at ¶ 34, citing *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-

Ohio-938, at ¶ 55. The fact that the agreement includes a clear and prominent explanation that the parties were waiving access to judicial remedies by executing the arbitration agreement is an additional factor that weighs against a conclusion that the agreement is substantively unconscionable. *See id.* at ¶ 44; *Harrison* at ¶ 54; *Manley* at ¶ 38.

{¶19} Finally, Zellner argues that the arbitration agreement is substantively unconscionable because she would be required to advance the costs of arbitration up front and could ultimately be responsible for paying all of those costs. This argument is unavailing. Although she does not phrase her argument as such, Zellner appears to suggest that the arbitration agreement's provision for the payment of costs and fees is effectively a "loser pays" provision.

{¶20} Ohio courts of appeals have consistently concluded that "loser pays" provisions in arbitration agreements are unenforceable as being against public policy or that they are a factor weighing in favor of finding substantive unconscionability. *See, e.g.*, *Gaither v. Wall & Associates, Inc.*, 2d Dist. Montgomery No. 26959, 2017-Ohio-765, ¶ 50-51, 65, citing *DeVito v. Autos Direct Online, Inc.*, 8th Dist. Cuyahoga No. 100831, 2015-Ohio-3336, ¶ 36-46; *Fortune*, 164 Ohio App.3d 689, 2005-Ohio-6195, at ¶ 27-30, 34; *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App.3d 66, 2004-Ohio-5757, ¶ 24-26 (6th Dist.). However, we conclude that the disputed provision is not a "loser pays" provision that renders the

arbitration agreement substantively unconscionable or otherwise unenforceable. First, while the clause explicitly provides that "[t]he administrative fee and arbitrator's compensation shall be initially advanced by the party requesting arbitration," it also provides that ultimate responsibility for these costs are to be borne by the parties in proportion to their award. Thus, although it is conceivable that one party could pay the entire administrative fee and arbitrators' compensation if the other party, and only the other party, prevails, the provision does not operate as a "loser pays" provision, per se.

{¶21} More importantly, the agreement provides that only "[t]he administrative fee and arbitrator's compensation" shall be allocated in this fashion. The award of other, potentially exorbitant costs of arbitration, which may include attorneys' fees, discovery expenses, and costs associated with motion practice, "shall be determined by the arbitrator in accordance with all applicable laws." Such "applicable laws" could include, for example, the general rule that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34 (1987) and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 382 (1927). Thus, this clause does not necessarily require the losing party to pay all of the prevailing party's expenses and is distinguishable from the "loser pays" provisions that have

contributed to findings of substantive unconscionability or rendered arbitration agreements, or portions of arbitration agreements, unenforceable. *See Gaither* at ¶ 6 ("[T]he substantially prevailing party in the arbitration will be entitled to recover from the other all costs, fees, and expenses pertaining or attributable to such arbitration, including reasonable attorneys' fees for those claims on which the substantially prevailing party prevailed."); *Fortune* at ¶ 14 ("'The prevailing party in the arbitration shall be entitled to have the other party pay its costs for the arbitration, including reasonable attorney's fees and prejudgment interest.'"); *Small* at ¶ 17 (same).

{¶22} In addition, Zellner contends that this clause renders the arbitration agreement substantively unconscionable because, by making arbitration prohibitively expensive, it "deter[s] a potential plaintiff who has been the victim of negligence from moving forward with arbitration * * *." (*See* Appellant's Brief at 10-11, 17). "There is a point at which the costs of arbitration could render a clause unconscionable as a matter of law." *Neel v. A. Perrino Constr., Inc.*, 8th Dist. Cuyahoga No. 105366, 2018-Ohio-1826, ¶ 18, citing *Arnold v. Burger King*, 8th Dist. Cuyahoga No. 101465, 2015-Ohio-4485, ¶ 89, citing *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 60. However, "an arbitration clause will not be held unenforceable based on unsupported allegations of prohibitive costs." *Taylor Bldg.* at ¶ 59, citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct.

513 (2000). The party seeking to avoid arbitration because of prohibitive cost "must provide more than unsupported allegations of prohibitive costs, because 'the mere risk that a plaintiff would be forced to pay exorbitant costs is too speculative to justify invalidation of the arbitration agreement.'" *Neel* at ¶ 19, quoting *Taylor Bldg.* at ¶ 57.

**{¶23}** Here, Zellner did not present any evidence whatsoever demonstrating that the costs of arbitration would be prohibitive, unreasonable, or unfair as applied to her. *See Rinderle v. Whispering Pines Health Care Ctr.*, 12th Dist. Fayette No. CA2007-12-041, 2008-Ohio-4168, ¶ 19, citing *Taylor Bldg.* at ¶ 56-57. *See also Harrison*, 2013-Ohio-3163, at ¶ 42-44. The arbitration agreement clearly identifies both the organization that would be responsible for administering arbitration and the rules and procedures under which such arbitration would be conducted.[3] Yet, Zellner did not present a fee schedule from the organization, offer an explanation as to why such a schedule could not be obtained, or attempt to provide a calculation of the total expected costs of arbitration beyond initial administrative and filing fees. Additionally, Zellner provided no evidence of the estate's financial position or of her individual financial position. Thus, even if Zellner had put on evidence of the expected costs of arbitration, the trial court would not have been capable of

---

[3] This provision also dispenses with Zellner's contention that the arbitration agreement is substantively unconscionable because it fails to provide any specific rules that will be applied to the arbitration of claims. *See Riggs v. Patriot Energy Partners, L.L.C.*, 7th Dist. Carroll No. 11 CA 877, 2014-Ohio-558, ¶ 51, citing *Peltz v. Moyer*, 7th Dist. Belmont No. 06 BE 11, 2007-Ohio-4998, ¶ 48.

determining whether those costs were prohibitive, unfair, or unreasonable *as applied to her*. *See Rinderle* at ¶ 20, citing *Taylor Bldg.* at ¶ 58; *Harrison* at ¶ 44.

**{¶24}** In light of the foregoing, we conclude that Zellner has not carried her burden of demonstrating that the arbitration agreement is substantively unconscionable. Because the party alleging unconscionability must demonstrate both substantive and procedural unconscionability, we need not address whether the arbitration agreement is procedurally unconscionable. *See Shearer v. VCA Antech, Inc.*, 10th Dist. Franklin No. 11AP-44, 2011-Ohio-5171, ¶ 29 ("The failure to demonstrate either type of unconscionability alleviates the need to address the other."), citing *John R. Davis Trust*, 2008-Ohio-6311, at ¶ 21, *Reno v. Bethel Village Condominium Assn., Inc.*, 10th Dist. Franklin No. 08AP-10, 2008-Ohio-4462, ¶ 13, and *Corl v. Thomas & King*, 10th Dist. Franklin No. 05AP-1128, 2006-Ohio-2956, ¶ 37. Therefore, the trial court did not abuse its discretion by staying the proceedings despite Zellner's claims of unconscionability.

**{¶25}** We also consider Zellner's argument that the arbitration agreement is unenforceable for failure to comply with R.C. 2711.23. Zellner argues that because "the arbitration clause in this case completely fails to meet several requirements of [R.C. 2711.23], it is invalid and unenforceable as a matter of law." (Appellant's Brief at 9). In particular, Zellner argues that the arbitration agreement fails to comply with R.C. 2711.23(C), (E), and (G). (*Id.* at 10-11).

R.C. 2711.22 provides:

[A] written contract between a patient and a hospital or healthcare provider to settle by binding arbitration any dispute or controversy arising out of the diagnosis, treatment, or care of the patient rendered by a hospital or healthcare provider, that is entered into prior to the diagnosis, treatment, or care of the patient is valid, irrevocable, and enforceable once the contract is signed by all parties. The contract remains valid, irrevocable, and enforceable until or unless the patient or the patient's legal representative rescinds the contract by written notice within thirty days of the signing of the contract.

R.C. 2711.22(A). In turn, R.C. 2711.23 provides, in relevant part:

To be valid and enforceable any arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical, dental, chiropractic, or optometric claim that is entered into prior to a patient receiving any care, diagnosis, or treatment shall include or be subject to the following conditions:

* * *

(C) The agreement shall provide that the decision whether or not to sign the agreement is solely a matter for the patient's determination without any influence;

* * *

(E) The agreement shall provide that the arbitration expenses shall be divided equally between the parties to the agreement;

* * *

(G) The arbitration agreement shall be separate from any other agreement, consent, or document[.]

R.C. 2711.23(C), (E), (G).

{¶26} We conclude that the trial court did not abuse its discretion by staying the entire proceedings because, even assuming that the arbitration agreement does not comply with R.C. 2711.23, staying the proceedings pending arbitration is appropriate because Zellner's action includes at least one non-medical claim subject to the arbitration agreement.  By its terms, R.C. 2711.23 applies only to arbitration agreements between patients and hospitals or healthcare providers for controversies "involving * * * medical, dental, chiropractic, or optometric claim[s] that [are] entered into prior to a patient receiving any care, diagnosis, or treatment."  *See Donnell v. Parkcliffe Alzheimer's Community*, 6th Dist. Wood No. WD-17-001, 2017-Ohio-7982, ¶ 26-27; R.C. 2711.22(A).  Therefore, an agreement to arbitrate non-medical, non-dental, non-chiropractic, or non-optometric claims does not need to comply with R.C. 2711.23 to be valid and enforceable.  Instead, whether an agreement to arbitrate non-medical, non-dental, non-chiropractic, or non-optometric

claims is enforceable is a question of general principles of contract law, not compliance with R.C. 2711.23. *See* R.C. 2711.01(A) ("[A]ny agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."). If a party brings claims against another party—some of which are medical, dental, chiropractic, or optometric claims and some of which are not—an arbitration agreement between the parties must comply with R.C. 2711.23 in order to arbitrate the medical, dental, chiropractic, or optometric claims.[4] *See Donnell* at ¶ 26. However, to arbitrate the non-medical, non-dental, non-chiropractic, or non-optometric claims, that same agreement need not comply with R.C. 2711.23.

**{¶27}** Here, in addition to bringing various medical claims against the defendants, Zellner's complaint also includes a claim for ordinary negligence. Zellner's complaint provides as follows:

56. The claims against the Defendants in this case include claims for

ordinary negligence that do not involve a decision, act, or omission

---

[4] This assumes that the arbitration agreement was (1) entered into between a patient and a hospital or healthcare provider (2) before the patient received any care, diagnosis, or treatment—two additional conditions necessary to subject an arbitration agreement to the requirements of R.C. 2711.23.

requiring knowledge of medical science or specialized training or skill.

57. Some of the acts or omissions complained of herein regarding the Defendants may be assessed by the trier of fact on the basis of common, everyday experiences and the common knowledge of a lay person.

58. In other words, some of the acts or omissions complained of do not implicate questions of medical competence nor involve matters of medical science nor art requiring specialized knowledge, training, or skills not ordinarily possessed by lay persons.

59. Moreover, the acts or omissions complained of herein involve custodial neglect perpetuated [sic] by persons who were not medical professionals and/or the acts and omissions complained of herein resulted from the dangerous administrative policies, systems, directives, and/or practices engaged in by the Defendants which affected not only Glenna A. Zellner, who is now deceased, but an entire group of residents in the facility.

60. Accordingly, some of the claims set forth herein sound in ordinary negligence, not medical negligence.

(Doc. No. 2). Hence, at least one of Zellner's claims against the defendants is a non-medical claim embraced within the scope of the broad arbitration agreement.

**{¶28}** As will be discussed in detail below, because at least one claim in Zellner's action against the defendants is subject to the arbitration agreement, Zellner's entire action against the defendants must be stayed pending arbitration. *U.S. Bank Natl. Assn.*, 2016-Ohio-2766, at ¶ 42 ("[W]hen a trial court determines that certain claims are subject to arbitration, it must stay the entire proceeding until those claims have been arbitrated, even though the action may involve both arbitrable and non-arbitrable claims."). Thus, assuming without deciding that the arbitration agreement does not comply with R.C. 2711.23 and that it is thus unenforceable as to Zellner's medical claims, staying the entire action was nevertheless appropriate because Zellner's action consists of at least one arbitrable claim. Accordingly, the trial court did not abuse its discretion by staying the entire proceedings.

**{¶29}** Next, we address Zellner's argument that the trial court erred by staying the proceedings pending arbitration because the defendants waived their rights to enforce the arbitration agreement. Specifically, Zellner argues that although the defendants "clearly knew of their alleged right to arbitration," they "did not move to stay the case in response to [Zellner's] Complaint," "demanded a jury trial in their Answer," and "propounded written discovery requests" to which

Zellner responded. (Appellant's Brief at 18-19). According to Zellner, the defendants' actions are "inconsistent with any right to arbitrate and, as a result, [the defendants] * * * thereby waived any such right." (*Id.* at 19).

**{¶30}** "'Like any other contractual right, * * * the right to arbitrate may be implicitly waived.'" *Donnell*, 2017-Ohio-7982, at ¶ 20, quoting *Travelers Cas. & Sur. Co. v. Aeroquip-Vickers, Inc.*, 6th Dist. Lucas No. L-06-1201, 2007-Ohio-5305, ¶ 34. ""'Whether the contractual right to arbitration has been waived is a mixed question of both factual issues and the weight to be given those facts under the applicable legal standard.""" *Alford v. Arbors at Gallipolis*, 4th Dist. Gallia No. 17CA11, 2018-Ohio-4653, ¶ 52, quoting *Donnell* at ¶ 20, quoting *Buyer v. Long*, 6th Dist. Fulton No. F-05-012, 2006-Ohio-472, ¶ 7. ""'[A]lthough questions of law may be reviewed de novo, the trial court's ultimate determination of whether the right to demand arbitration has been waived will be reviewed under an abuse of discretion standard.""" *Id.*, quoting *Donnell* at ¶ 20, quoting *Buyer* at ¶ 7.

**{¶31}** "'Waiver may attach where there is active participation in a lawsuit demonstrating an acquiescence to proceeding in a judicial forum.'" *Donnell* at ¶ 21, quoting *Buyer* at ¶ 13. "'A party asserting waiver must establish that (1) the waiving party knew of the existing right to arbitrate; and (2) the totality of the circumstances demonstrate the party acted inconsistently with the known right.'" *Id.*, quoting *Buyer* at ¶ 11, citing *Atkinson v. Dick Masheter Leasing II, Inc.*, 10th Dist. Franklin

No. 01AP-1016, 2002-Ohio-4299, ¶ 20. In determining whether the totality of the circumstances supports a finding of waiver, courts may consider such factors as:

(1) any delay in the requesting party's demand to arbitrate via a motion to stay judicial proceedings and an order compelling arbitration; (2) the extent of the requesting party's participation in the litigation prior to its filing a motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party complaint without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts.

*U.S. Bank Natl. Assn.*, 2016-Ohio-2766, at ¶ 14, citing *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 414 (3d Dist.1997). "'Because of the strong public policy in favor of arbitration, the heavy burden of proving waiver of the right to arbitration is on the party asserting waiver.'" *Id.*, quoting *Griffith v. Linton*, 130 Ohio App.3d 746, 751 (10th Dist.1998). "Therefore, a court will not lightly infer waiver of a right to arbitrate." *Id.*, citing *Harsco Corp.* at 415.

{¶32} Based on the totality of the circumstances, we conclude that the defendants did not waive their rights to arbitrate. Zellner argues that the defendants'

demand for a jury trial in their answer and submission of discovery requests evidence that the defendants waived their rights to arbitrate. (*See* Doc. No. 21); (*See also* Doc. No. 27, Defendants' Ex. A). We disagree. Rather than evincing an intention to relinquish the right to arbitrate, the defendants' demand for a jury trial is better understood as an effort to protect their rights to a jury trial in the event that their attempts to stay the proceedings pending arbitration ultimately proved unsuccessful. *Alford* at ¶ 58. *See Donnell* at ¶ 22-24.

**{¶33}** Likewise, Zellner's argument that the defendants waived their rights to arbitrate because they "propounded written discovery requests" fails to account for the limited extent of the defendants' participation in the discovery process. On May 8, 2018, a day before their answer was filed, the defendants propounded to Zellner their "First Set of Interrogatories and Request for Production of Documents and Things." (*See* Doc. No. 27, Defendants' Ex. A). However, the defendants withdrew this initial request for discovery less than a week later on the morning of May 14, 2018. (*Id.*). Nevertheless, despite the defendants' notice of withdrawal of their requests for discovery, Zellner responded to the defendants' withdrawn requests on the evening of May 14, 2018 by sending the defendants copies of Glenna's medical records and bills. (*See* Doc. No. 27, Defendants' Ex. B). Aside from this sequence of events, the defendants did not participate in discovery with Zellner. (*See* Doc. No. 26) ("Defendants have absolutely refused to participate in

any discovery whatsoever."). Ohio courts have found discovery more extensive than that present in this case insufficient to establish waiver of the right to arbitrate. *See, e.g.*, *Fries v. Greg G. Wright & Sons, L.L.C.*, 1st Dist. Hamilton No. C-160818, 2018-Ohio-3785, ¶ 30 (holding that the party seeking to enforce arbitration did not waive the right by asking for additional time from the trial court to respond to discovery and by taking one deposition); *Donnell*, 2017-Ohio-7982, at ¶ 4, 22-24 (the party seeking to enforce arbitration did not waive the right despite propounding interrogatories, requests for production, and requests for admissions and responding to their opponent's interrogatories, requests for production, and requests for admissions); *Harsco Corp.* at 416 (holding that the right to arbitrate had not been waived where "a limited number of depositions were conducted" by the party seeking arbitration). Consequently, the defendants' quickly-abandoned discovery requests do not support a finding of waiver. *See Fries* at ¶ 30 ("Discovery must be extensive to constitute a waiver."), citing *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975).

**{¶34}** Moreover, Zellner's argument that the defendants waived their rights to arbitrate because they did not move to stay the proceedings in response to Zellner's complaint is unpersuasive. The defendants filed their motion to stay on May 31, 2018—less than two months after Zellner filed her complaint on April 9, 2018 and less than one month after filing their answer on May 9, 2018. (Doc. Nos.

2, 21, 23). A delay of less than two months is insufficient to establish waiver of the right to arbitrate. *See Fries* at ¶ 29 (holding that a 94-day delay between the filing of the complaint and the filing of the motion to stay was insufficient to demonstrate waiver of the right to arbitrate); *Donnell* at ¶ 23-24 (a four-month delay in filing a motion to stay was insufficient to establish waiver); *Milling Away, L.L.C. v. Infinity Retail Environments, Inc.*, 9th Dist. Summit No. 24168, 2008-Ohio-4691, ¶ 14 (a six-month delay before seeking arbitration was insufficient to establish waiver); *Harsco Corp.*, 122 Ohio App.3d at 416 (a three-month delay did not result in waiver).

{¶35} Additional factors weigh against a finding of waiver. First, the defendants affirmatively pleaded the right to arbitrate in their answer. (*See* Doc. No. 21). Although a party is not required to affirmatively plead the right to arbitrate in order to preserve the right, doing so is a factor that weighs against a finding of waiver. *Alford*, 2018-Ohio-4653, at ¶ 56-58; *Donnell* at ¶ 22-24; *Harsco Corp.* at 415-416. *See U.S. Bank Natl. Assn.*, 2016-Ohio-2766, at ¶ 18, citing *Hudson v. Ernst & Young, L.L.P.*, 189 Ohio App.3d 60, 2010-Ohio-2731, ¶ 37 (10th Dist.). Furthermore, the defendants' answer did not set forth a counterclaim against Zellner or a third-party complaint. (Doc. No. 21). *See Harsco Corp.* at 416 (noting that the filing of a complaint, counterclaim, or summary judgment motion by the party

seeking to enforce the right to arbitrate would demonstrate that party's "recognition of the trial court's authority to determine the suit pending before it").

{¶36} Lastly, Zellner has not demonstrated that she was prejudiced by any of the defendants' actions that she claims are inconsistent with the right to arbitrate. A trial date had not been set and the parties had not met for a status conference or conducted a pretrial hearing. *See Alford* at ¶ 57. Furthermore, any prejudice Zellner may have suffered because she responded to the defendants' written discovery requests was at least partially self-inflicted as the defendants clearly retracted their requests before Zellner submitted a response. Thus, the totality of the circumstances does not support a finding of waiver. Accordingly, the trial court did not abuse its discretion by staying the proceedings despite Zellner's claims of waiver.

{¶37} Finally, we address whether the trial court erred by staying litigation on all of Zellner's claims, and as to all the defendants, pending arbitration. Zellner argues that the trial court erred by staying litigation on her wrongful-death claim because "[t]he arbitration clause in this case cannot subject [her] wrongful death claims to binding arbitration." (Appellant's Brief at 11). As a result, Zellner contends, "the Trial Court erred when it required Glenna Zellner's next-of-kin to arbitrate their wrongful death claims." (*Id.* at 12). In addition, Zellner argues that she "cannot be required to arbitrate her claims against" six of the defendants because those six defendants "were not parties to the Arbitration Clause." (*Id.* at 6). She

further argues that "[w]ithout a valid contract obligating [her] to arbitrate her dispute with [the six defendants], * * * [the] Motion to Stay should have been denied." (*Id.* at 9). At the very least, Zellner maintains, "the Trial Court's order should have clearly stated that [her] claims against [the six defendants] were not subject to arbitration because no agreement to arbitrate exists." (*Id.*).

{¶38} At the outset, we note that Zellner mischaracterizes the trial court's judgment in this case. The defendants sought a stay of the proceedings under R.C. 2711.02, rather than an order under R.C. 2711.03 directing specified parties to arbitrate specified claims pursuant to the arbitration agreement. (*See* Doc. No. 23). Instead of ordering certain claims into arbitration or ordering certain parties to engage in arbitration, the trial court merely stayed the litigation pending arbitration under R.C. 2711.02. Thus, Zellner's contention that the trial court erroneously forced her wrongful-death claim and claims against the six defendants into arbitration is incorrect. Nevertheless, Zellner still raises the question of whether the stay is appropriate even if some of her claims are non-arbitrable and some of the defendants against whom she brought suit are not subject to the arbitration agreement.

{¶39} First, Zellner argues that the trial court erred by granting the stay because her wrongful-death claim against the defendants is not arbitrable. Under the facts of this case, Zellner is probably correct that her wrongful-death claim is

not subject to the arbitration agreement. In *Peters v. Columbus Steel Castings Co.*, the Supreme Court of Ohio considered "whether the personal representative of a decedent's estate is required to arbitrate a wrongful-death claim when the decedent had agreed to arbitrate all claims against the alleged tortfeasor." 115 Ohio St.3d 134, 2007-Ohio-4787, ¶ 1. In answering that question in the negative, the court noted that, under Ohio law, "survival claims and wrongful-death claims are distinct claims that belong to separate individuals, even though they are generally brought by the same nominal party (the personal representative of the estate)." *Id.* at ¶ 17. As a result, although a person could agree to arbitrate his own claims, whether brought during his life or after his death, that person "could not restrict his beneficiaries to arbitration of their wrongful-death claims, because he held no right to those claims; they accrued independently to his beneficiaries for the injuries they personally suffered as a result of the death." *Id.* at ¶ 18-19, citing *Thompson v. Wing*, 70 Ohio St.3d 176, 182-183 (1994). While "[t]he beneficiaries can agree to arbitrate [their wrongful-death claims] themselves, * * * they are not required to do so." *Id.* at ¶ 19.

{¶40} Here, Glenna's beneficiaries did not sign the arbitration agreement. Although the arbitration agreement was signed by Glenna's husband, Jack, he did so in his capacity as Glenna's power of attorney rather than in his individual capacity. (*See* Doc. No. 23, Defendants' Ex. A). Additionally, neither Zellner's

signature nor the signature of any other purported beneficiary of Glenna's estate appear on the arbitration agreement. (*See id.*). Thus, from the available record, it appears that Glenna's beneficiaries did not bind themselves to arbitrate their wrongful-death claims against the defendants. Resultantly, Glenna's beneficiaries likely cannot be compelled to arbitrate their wrongful-death claims against the defendants.

{¶41} However, as indicated above, the trial court did not compel Zellner to arbitrate her wrongful-death claim against any of the defendants; instead, the trial court merely stayed the proceedings pending arbitration. Although Zellner's wrongful-death claim is likely not subject to the arbitration agreement, this does not mean that the trial court abused its discretion by staying the entire litigation, including litigation as to the wrongful-death claim. "'Where any claim in an action is subject to arbitration under R.C. 2711.02(B), a court must stay the entire proceeding, although nonarbitrable claims exist.'" *Raber v. Emeritus at Marietta*, 4th Dist. Washington No. 15CA18, 2016-Ohio-1531, ¶ 24, quoting *Jarvis v. Lehr*, 1st Dist. Hamilton No. C-130832, 2014-Ohio-3567, ¶ 11 and citing *Maclin v. Greens Nursing & Assisted Living, L.L.C.*, 8th Dist. Cuyahoga No. 101085, 2014-Ohio-2538, ¶ 9 and *Villas Di Tuscany*, 2014-Ohio-776, at ¶ 20; *Marquez v. Koch*, 4th Dist. Ross No. 11CA3283, 2012-Ohio-5466, ¶ 11 ("[T]he presence of non-arbitrable claims * * * does not justify the denial of [a] motion to stay."). Therefore,

to the extent that Zellner's other claims are subject to the arbitration agreement, the trial court did not abuse its discretion by staying litigation on Zellner's wrongful-death claim pending resolution of the arbitrable claims. *See Alford*, 2018-Ohio-4653, at ¶ 45-48; *Donnell*, 2017-Ohio-7982, at ¶ 39-40; *Raber* at ¶ 26-27; *Wolcott v. Summerville at Outlook Manor, L.L.C.*, 10th Dist. Franklin No. 15AP-550, 2016-Ohio-1237, ¶ 18-23; *Litman v. HCR ManorCare, Inc.*, 5th Dist. Stark No. 2014CA00224, 2015-Ohio-2637, ¶ 6-17; *Maclin* at ¶ 9-12.

{¶42} Similarly, we reject Zellner's argument that the trial court erred by staying the entire proceedings because some of the defendants were neither a party to the arbitration agreement nor in privity with a signatory to the agreement. Zellner does not argue that *all* of the defendants were nonparties to the arbitration agreement; rather, Zellner argues that *some* of the defendants were not a party to the agreement. (*See* Appellant's Brief at 6-9). However, it is well-established that if "any of the claims are subject to an arbitration agreement, R.C. 2711.02 requires a stay of the proceeding, regardless of whether the dispute also involves parties who cannot be compelled to arbitrate." *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, ¶ 11 (9th Dist.), citing *BSA Invests., Inc. v. DePalma*, 173 Ohio App.3d 504, 2007-Ohio-4059, ¶ 16-17, *DH-KL Corp. v. Stampp Corbin Corp.*, 10th Dist. Franklin No. 97APE02-206, 1997 WL 467319, *3 (Aug. 12, 1997) and *Krafcik v. USA Energy Consultants, Inc.*, 107 Ohio App.3d 59,

64 (8th Dist.1995); *Jarvis* at ¶ 11; *Marquez* at ¶ 11. Thus, to the extent that Zellner's action includes at least one arbitrable claim, because she acknowledges that at least one of the defendants was a party to the arbitration agreement, it is irrelevant whether the other six defendants were parties to the arbitration agreement. Under these circumstances, the presence of a single arbitrable claim against a single defendant subject to the arbitration agreement required the trial court to stay the proceedings as to all the defendants. Therefore, the trial court did not abuse its discretion by staying the entire proceedings as to all the defendants.

{¶43} Zellner's first assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court erred in not permitting Appellant to conduct discovery in relation to Appellees' Motion to Stay Pending Arbitration**

{¶44} In her second assignment of error, Zellner argues that the trial court erred by staying the proceedings without allowing her to conduct discovery relevant to determining whether the arbitration agreement is valid and enforceable. In particular, Zellner argues that "it is reversible error to grant a motion to stay pending arbitration without affording the nonmoving party the opportunity to conduct discovery and to present their findings on whether the arbitration clause is valid and enforceable." (Appellant's Brief at 19-20). Additionally, she argues that because the trial court did not issue a decision on her motion to compel, the trial court "never

afforded [her] an opportunity to explore the circumstances surrounding the nature and execution of the arbitration clause." (*Id.* at 22). Zellner concludes that "a trial court that fails to provide for adequate time to fully develop the record regarding the circumstances surrounding the nature and execution of an arbitration clause is abusing its discretion and committing a reversible error." (*Id.*).

{¶45} We first address Zellner's contention that the trial court never decided her motion to compel discovery. "It has generally been held that 'a trial court's failure to rule gives rise to a presumption that the trial court has denied the motion.'" *Alford*, 2018-Ohio-4653, at ¶ 72, quoting *GMAC Mtge., L.L.C. v. Jacobs*, 196 Ohio App.3d 167, 2011-Ohio-1780, ¶ 9 (9th Dist.). Here, although the trial court did not expressly deny Zellner's motion on the record, it is clear that the trial court granted the defendants' motion to stay after duly considering Zellner's motion, effectively denying Zellner's motion. (*See* Doc. No. 28) ("Plaintiff filed a Motion for Extension of Time to Respond to Defendants' Motion to Stay Proceedings * * * [and] Motion to Compel * * *. Plaintiff argues that additional discovery and time are required to permit her to * * * attack[] the validity of the arbitration clause."). Zellner does not cite to any evidence in the record suggesting otherwise. Thus, we presume that the trial court denied Zellner's motion to compel discovery.

{¶46} "A decision to grant or deny a discovery motion rests within the sound discretion of the trial court." *Alford* at ¶ 70, citing *Stephens v. Marietta Mem. Hosp.*,

4th Dist. Washington No. 95CA46, 1996 WL 551405, *6 (Sept. 23, 1996), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578 (1996); *Zimpfer v. Roach*, 3d Dist. Shelby No. 17-17-03, 2017-Ohio-8437, ¶ 27, citing *State ex rel. Grandview Hosp. & Med. Ctr. v. Gorman*, 51 Ohio St.3d 94, 96 (1990). "The trial court has discretion to manage the discovery process." *Alford* at ¶ 70, citing *State ex rel. Daggett v. Gessaman*, 34 Ohio St.2d 55 (1973). As previously indicated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶47} As discussed in detail under Zellner's first assignment of error, she raises five specific arguments attacking the trial court's decision to stay the entire proceedings pending arbitration. These five arguments were also presented in some form to the trial court alongside Zellner's motion to compel as reasons to deny the defendants' motion to stay. (*See* Doc. No. 26). Four of these arguments—that the arbitration agreement fails to comply with R.C. 2711.23, that the defendants waived their rights to arbitrate, that Zellner's wrongful-death claim is not arbitrable, and that the arbitration agreement is not binding as to all of the defendants—could have been fully developed in the trial court without additional discovery because they are based on interpreting the terms of the arbitration agreement in light of generally applicable law, applying well-established precedent, or evaluating the parties' conduct as reflected in the record. Zellner appears to concede as much. (Appellant's

Brief at 25) ("If given appropriate notice, [Zellner] could have challenged the arbitration clause in a number of ways * * * even without additional discovery."). Only one of Zellner's arguments—that the trial court abused its discretion by staying the proceedings because the arbitration agreement is unconscionable—could have potentially been affected by evidence outside of the available record, i.e., the circumstances surrounding the execution of the arbitration agreement. Therefore, we limit our analysis to determining whether the trial court abused its discretion by precluding Zellner from conducting further discovery into the issue of unconscionability.

{¶48} We conclude that, under the particular facts and circumstances of this case, the trial court did not abuse its discretion by denying Zellner's motion to compel discovery. As previously discussed, a party must demonstrate *both* procedural unconscionability *and* substantive unconscionability. *Hayes*, 122 Ohio St.3d 63, 2009-Ohio-2054, at ¶ 20, 30. Substantive unconscionability involves a consideration of the terms of the agreement and whether those terms are commercially reasonable. *Id.* at ¶ 33. Here, the parties provided the trial court with a copy of the arbitration agreement. The trial court was thus in a position to examine the terms of the agreement to determine whether they were so unfair or unreasonable as to render the agreement substantively unconscionable. As we determined above, the trial court did not err in determining that the agreement was substantively

conscionable. The discovery requested by Zellner concerned principally the circumstances and process of executing the arbitration agreement. Accordingly, the discovery sought by Zellner was addressed to procedural unconscionability, rather than substantive unconscionability. However, because a person must demonstrate both substantive and procedural unconscionability to order to establish unconscionability, the discovery sought by Zellner would not have affected the viability of her unconscionability argument because she failed to establish substantive unconscionability. Finally, to the extent that Zellner could have used additional evidence to demonstrate substantive unconscionability—such as an estimation of the costs of arbitration or a statement evidencing the estate's financial position or her own financial position—such information could have been obtained without the requested discovery. Thus, the trial court did not abuse its discretion by denying Zellner's motion to compel. *See Eberhard v. Chicago Title Ins. Co.*, N.D.Ohio No. 1:11 CV 834, 2012 WL 13029534, *6 (Mar. 31, 2012) (applying Ohio law and denying the plaintiffs' "request for additional discovery to uncover facts related to procedural unconscionability" where sufficient information was before the court to conclude that an arbitration agreement was not substantively unconscionable).

{¶49} Zellner's second assignment of error is overruled.

**Assignment of Error No. III**

**The Trial Court erred in ruling on Appellees' Motion to Stay Pending Arbitration without giving Appellant an opportunity to oppose Appellees' Motion.**

{¶50} In her third assignment of error, Zellner argues that the trial court erred by staying the proceedings because she "was not given the opportunity to file a Brief in Opposition to Appellees' Motion to Stay." (Appellant's Brief at 23). Zellner asserts that the "Trial Court never ruled on [her] Motion for Extension and did not give [her] notice that it would be ruling on [the defendants'] Motion to Stay." (*Id.*). She argues that "[e]ven if the Trial Court was inclined to deny [her] additional time to conduct discovery, it should have given [her] formal notice though [sic] the grant of a limited continuance, that [she was] running out of time and that the court was about to render judgment in the case." (*Id.* at 25). She concludes that, in the absence of "the opportunity to respond, [the defendants'] Motion to Stay went unchallenged." (*Id.*).

{¶51} We reiterate that "'a trial court's failure to rule gives rise to a presumption that the trial court has denied the motion.'" *Alford*, 2018-Ohio-4653, at ¶ 72, quoting *GMAC Mtge., L.L.C.*, 196 Ohio App.3d 167, 2011-Ohio-1780, at ¶ 9. Again, because Zellner has not demonstrated that the trial court failed to render a decision on her motion for an extension of time to respond to the defendants' motion to stay, we presume that the trial court denied her motion.

{¶52} Zellner's arguments are without merit. Zellner has provided no authority germane to her argument that the trial court was required to notify her that a ruling on the defendants' motion to stay was imminent, and we have been unable to locate any such authority. *See Alford* at ¶ 73. The month that elapsed between the filing of the defendants' motion to stay and the trial court's ruling on the motion afforded Zellner ample time to respond to the motion, and per her own admission, she could have done so adequately even without the grant of additional time to conduct discovery as she requested. (*See* Appellant's Brief at 25). Finally, Zellner's assertions that she was completely denied the opportunity to respond to the defendants' motion to stay and that the motion to stay went unopposed are, at best, disingenuous. Zellner's combined motion for extension of time to respond to the defendants' motion to stay proceedings pending arbitration, motion to compel, and brief in opposition to the defendants' motion for a protective order is a 20-page document that sets forth, to varying degrees of detail, each of the five arguments advanced in Zellner's first assignment of error. (*See* Doc. No. 26). The defendants responded to Zellner's combined motion with a memorandum in opposition responsive to each of Zellner's five arguments. (*See* Doc. No. 27). Thus, the trial court was adequately briefed concerning Zellner's arguments and the defendants' responses thereto before granting the defendants' motion to stay. This is especially true given that, as discussed above, the additional discovery requested by Zellner

would have had little, if any, bearing on the trial court's resolution of each of her five arguments.

{¶53} Zellner's third assignment of error is overruled.

{¶54} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**